Alfred Roy *vs.* United Electric Railways Co.

APRIL 1, 1932.

Present: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

PER CURIAM. This is an action of trespass on the case for negligence to recover for personal injuries and resulting loss caused by a collision between an auto truck, in which the plaintiff was riding, and an electric car, owned and operated by the defendant. A jury in the Superior Court returned a verdict for the plaintiff for $10,000, and the case is before us on the defendant's exceptions as follows: To the admission of evidence; to certain remarks of the trial justice and to his ruling denying defendant's motion for a new trial.

Three cases involving this collision have been considered by us. See *Roy* v. *United Electric Rys. Co.*, 148 A. 595, where the facts are fully set forth; *Roy* v. *same*, 153 A. 369 and *Roy* v. *same*, 157 A. 428.

Exceptions 6 to 10 inclusive were taken to rulings admitting evidence tending to show loss to the plaintiff by reason of the falling off of profits in operating a farm and a roadside stand.

In the first one of these cases coming before us—reported in 148 A. 595—we held that the plaintiff was entitled, at least, to as much as was awarded, regardless of whether there was a loss in operating the farm; and we refused to set aside the verdict because it was reasonably clear that such testimony did not enhance the damages.

Although the trial justice in the case before us at different times in the course of the trial made assertions to the contrary, a careful reading of the opinion discloses that the court did not hold that such evidence of loss of profits was admissible. The opinion contains language as follows: "The several exceptions relating to plaintiff's asserted $2,200 profits from the partnership in 1927 do not require discussion. Irrespective of firm profits to plaintiff in 1927, the testimony was that plaintiff was capable of and did manual labor on the farm in 1927 and practically none in 1928."

In the second case—reported in 153 A. 369—it was not clear that such evidence did not enhance the damages. One of the reasons for ordering a new trial, unless a remittitur should be filed, was the admission of such evidence. The opinion contains language as follows: "Evidence was introduced to the effect that the plaintiff in the year preceding the accident received $2,200 as his share of the profits of a farm which he and his father and brothers operated as partners, and that in the following year his share was only $150. It does not follow that the shrinkage in profits was due to the accident. Decreased profits from farming may be due to many causes, such as unfavorable weather conditions and glutted markets. The plaintiff's principal contribution to the partnership was labor, and this could have been supplied by labor hired while the plaintiff was recovering."

The opinion in the third case, reported in 157 A. 428, contains a statement as follows: "In *Roy* v. *United Electric Railways Co.*, 153 A. 369, we expressed our disapproval of an award of damages based in part on loss of income due to a decrease of earnings of a partnership in the year of the accident from the earnings of said partnership in the previous year. So many other factors may have entered into the decrease in earnings of the partnership that they must be practically eliminated before the difference in the

earnings for the two years could be a proper basis for an award of damages for loss of income to the plaintiff."

Said exceptions 6 to 10 inclusive were taken to the admission of evidence purporting to show that during several years prior to the accident large profits were received from the plaintiff's farm, which was operated as a partnership by him and his three sons; and that after the accident the profits were very small.

In considering these exceptions it is necessary to note the distinction between personal earnings and profits. It may be stated as a general rule that loss of profits, as such, is not an element of damage; and that loss of personal earnings is a proper element to be considered. Whether a particular income is to be denominated "earnings" or "profits" depends primarily upon the answer to the question whether the income was produced by the personal efforts of the one seeking damages or derived from the use of invested capital in connection with his own efforts or the services of others. However, where the amount of capital invested is comparatively insignificant and the income is produced almost entirely by the personal efforts of the plaintiff—for example the case of a book-agent—it has been frequently held that the income, although partly from invested capital, is a proper element of damage.

In *Singer* v. *Martin*, 96 Wash. 231, the court said: "It is only when the investment is insignificant and merely incidental to the performance of a plaintiff's personal service that profits may be taken as a measure of loss or considered as an element of damages in personal injury cases, and then only because they are in reality personal earnings . . . ."

In *Pryor* v. *Metropolitan St. Ry. Co.*, 85 Mo. App. 367, the court made the following statement: "The word 'earnings' means the fruit or reward of labor; the price of services performed. Profits represent the net gain made from an investment or from the prosecution of some business after the payment of all expenses incurred. The net gain depends largely on other circumstances than the earning

capacity of the person managing the business. The profits of a business with which one is connected can not, therefore, be made use of as a measure of his earning power. Evidence showing that one has conducted a business with profit tends to show the possession of business qualities but it does not fix their value. It is the well established law that where one is injured in consequence of the negligent or wrongful act of another it is entirely competent for the former to show the loss of earning capacity in his business or occupation. But previous earnings must be restricted to those derived entirely from personal skill and services. Previous profits in business are not admissible in evidence in cases of this kind because of their speculative character . . . ."

In *Bierbach* v. *Goodyear Rubber Co.,* 11 N. W. 514, the court said: "As a basis for the assessment of damages, proof of the average value of the plaintiff's business while he carried it on was clearly incompetent. It could only be used to enable the jury to estimate therefrom what the future profits would have been had the plaintiff not been injured, and had he continued in business. Such a basis for the estimate of the future profits of the business in which the plaintiff was engaged is altogether too uncertain to furnish a safe guide for the verdict of a jury."

If we analyze the plaintiff's business in view of the well established rule it will appear that the plaintiff owned a farm of about 50 acres, which was devoted to the business; that seeds, fertilizer and some labor were purchased; that necessary farming tools and implements, including an auto truck and farm tractors, were used in the business; that not only the plaintiff but his three sons were engaged in the business; that all four of them were more or less injured as the result of the accident; that each brought an action for damages, including loss of profits from this farm. Ignoring for the present the question of capital involved, it would be impossible to determine how much the personal efforts of each contributed to the profits or how much the

loss of the services of any one contributed to the loss. There are few, if any, lines of business in which the results are more uncertain and more speculative than farming, in which the results depend upon so many uncertain elements such as frost and other conditions of the weather, which together with other elements affect the amount and quality of the crops. Again, after the crop has been raised, the condition of the market is another uncertain element; the effect of the law of supply and demand may be such as to turn that which might be expected to show a profit into a loss or an anticipated loss into a profit. As the court said in *City of Pueblo* v. *Griffin,* 10 Col. 366: "In this case the profits of plaintiff's business, as shown by him, were not the result of the labor of plaintiff alone, but were, at least in part, composed of other elements, and from the uncertainties and fluctuating nature of such business could not be the basis for the estimation of damages in a case like this." See also *Goodhart* v. *Penn. R. Co.,* 177 Pa. St. 1, 35 A. 191; *Weir* v. *Union Ry. Co.,* 188 N. Y. 416; *Eaton* v. *Wilmington City Ry. Co.,* 75 A. 369; *Silsby* v. *The Mich. Car. Co.,* 95 Mich. 204.

As the court said in *Masterton* v. *Village of Mt. Vernon,* 58 N. Y. 391: ."The plaintiff had the right to prove the business in which he was engaged, its extent, and the particular part transacted by him and, if he could, the compensation usually paid to persons doing such business for others. These are circumstances the jury have a right to consider in fixing the value of his time. But they ought not to be permitted to speculate as to the uncertain profits of commercial ventures, in which the plaintiff, if uninjured, would have been engaged."

Exceptions 6 to 10 inclusive are sustained.

Defendant took several exceptions to testimony relative to a septic condition, diagnosed as a carbuncle, which developed on the plaintiff's neck eight months after the accident. There being no evidence of causal relation between

the accident and said condition, the evidence was inadmissible; and the exceptions thereto are sustained.

Defendant took several exceptions to remarks made by the trial justice during the cross-examination of plaintiff's witness, Louis Roy. The plaintiff had introduced an account book purporting to show receipts and disbursements in the operation of the farm. The defendant had shown that checks for considerable amounts for green corn sold to one firm were not entered on said book. Said witness was called in rebuttal to explain this discrepancy. His explanation was that in each instance a part of the corn in question was purchased to fill the order and was included in the shipment; that no profit was made on these purchases; that the entry on the book merely showed the amount received for corn which they raised, and that witness actually drove the auto truck when the corn which was purchased was collected from other farmers. Said witness, who was injured in the same accident, had brought suit against this same defendant. See *Roy* v. *United Electric Railways Co.*, 153 A. 369. In the course of the trial of his case witness had testified that by reason of a severe injury to one of his knees he had been unable to perform any work during the year 1928, which included the time in question. Defendant's attorney, in attempting to contradict the witness by calling to his attention his testimony and contentions in his own case, asked the following question: "Do you mean to say you were able to drive your truck with the knee you had in August?"

This was a proper question to ask on cross-examination. Plaintiff's counsel objected. We quote from the colloquy between defendant's counsel and court:

"THE COURT: I will rule this out. You have gone far enough. You are getting beyond what is fair. It is a fact that he explained certain things about buying corn, and he said there was only part of the money that they credited on the book, only for what was grown on their farm, but

they did not credit what was bought and sold from others. You need not try that part of the case.

"Mr. Sweeney: I object to the court's remarks and ask for an exception.

"The Court: The court has a right to talk. You are not the whole show in this case.

"Mr. Sweeney: A very small part of it.

"The Court: Is there anything funny about it? You can see that your witnesses keep their faces smooth or I will excuse them. I have stood about all I can. Your other witnesses would better leave the room if they can't keep their faces straight. Other members of this court as well as myself have stood your petulance shown in these cases as long as we can, and I will not stand it any longer. Go ahead and try your case.

"Mr. Sweeney: I don't want to incur the court's displeasure but I would like an exception.

"The Court: I don't want to tell you again to go on and try your case if you are going to, and if I have to, the United Electric Railways Company will have another counsel to try their cases."

Defendant took exceptions to certain other remarks made by the trial justice during the direct examination of Leo Roy, witness for the plaintiff. Counsel for defendant attempted to interpose an objection to a question calling for an answer showing loss of profits from the farm. Before counsel was permitted to state his objection a somewhat lengthy colloquy between counsel and court followed. During the colloquy the court several times erroneously stated that loss of profits constituted a part of the damages which the plaintiff was entitled to recover.

The rule is that "not every unguarded remark of a trial judge in the presence of the jury is ground for reversal. To be so, it must be shown to be prejudicial to the rights of the party complaining, or at least appear probable that prejudice resulted." 38 Cyc. 1316. But it is reversible error on the part of the trial justice "to censure counsel for

alleged misconduct on his part in cases other than the one on trial . . . or without justification to make remarks calculated to disparage counsel in the eyes of the jury, or to assume a manifestly hostile attitude toward counsel of one of the parties. An attorney at law as an officer of the court is entitled to such treatment from the trial court that the interest of his client will not be prejudiced." 38 Cyc. pp. 1322, 1323.

It is difficult to conjecture as to what was the cause of the displeasure manifested by the justice towards counsel. In each instance counsel, at the time he was censured, was proceeding entirely within his rights and in accordance with his duty to his client and, so far as the record discloses, was maintaining a very respectful demeanor toward the court. There was no necessity for the court to interfere, as above set forth, in the trial of the case; the plaintiff's counsel was eminently capable of protecting his client's interests and at no time was remiss in his duty. If the witness was plainly embarrassed by the conflict between his attempted explanation and his testimony, given in his own case, this fact may have amused some part of the audience, but defendant's counsel was in no way responsible for the facial expressions of persons in the court room, other than by asking a proper question in the performance of his duty and, by so doing, attempting to discredit the witness and prevent what counsel evidently believed an attempt to perpetrate a fraud on the court and jury. It was the duty of the justice to preserve order in the court room but it was also his duty to permit the case to be tried in an orderly manner without making unnecessary and prejudicial remarks and interruptions.

The rulings of the court in each of the colloquies were erroneous and prejudicial. It is highly probable that the jury were prejudiced by reason of the court's attitude toward defendant's counsel. Regardless of the erroneous rulings which were prejudicial, the conduct of the trial justice

was such that the defendant did not receive a fair trial; and, for this reason also, a new trial is necessary.

The exceptions not specifically referred to are overruled.

The case is remitted to the Superior Court for a new trial.

*Quinn, Kernan & Quinn, Michael De Ciantis,* for plaintiff.

*Clifford Whipple, Earl A. Sweeney,* for defendant.