OMER NOEL *vs.* ARTHUR BERARD.
RITA NOEL *p. a. vs.* SAME.
MARCH 10, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

FLYNN, C. J.   These are actions of trespass on the case for negligence arising out of an automobile accident.   The plaintiff, Rita Noel, a minor, seeks to recover for personal injuries sustained by her; and Omer Noel, her father, sues for loss of his daughter's earnings and for medical care allegedly made necessary because of her injuries.

Both cases were tried together in the Superior Court before a justice, sitting with a jury, and resulted in verdicts of $750 in favor of Rita Noel, and of $500 in favor of her father, Omer Noel.   The defendant duly made a motion for a new trial in each case and, after hearing, each was denied by the trial justice, to which ruling the defendant excepted.   The cases are before us upon the defendant's bills of exceptions to these rulings and to certain other rulings made during the course of the trial.

The defendant, however, expressly waives all of the exceptions but the first in each case, which relates to the denial by the trial justice of the defendant's motion for a new trial.   The question is further restricted by the defendant, in his brief and oral argument, to the contention that his motion for a new trial in each case should have been granted because the damages, awarded by the jury, are excessive.

It appears from the evidence that the plaintiff Rita Noel was a guest in her sister's automobile, which was driven by another, and which was in collision with the defendant's truck on Main street, Pawtucket, April 7, 1934. She was then past sixteen years of age, and was going on eighteen years at the time of the trial. The plaintiff and her witnesses gave testimony that she received a cut on the nose; bruises on the right arm from shoulder to elbow; a large bruise upon the left leg; a bruise extending across the entire surface of her abdomen, reaching around to her back, which remained discolored for about three weeks or a month; a sprained back; a shock to her nervous system, which was manifested by headaches, loss of appetite, and disturbances of her sleep by dreams of accident; and the loss of eleven pounds in weight, following the accident; all of which required attention in a hospital, from which she was discharged during the same day of her entrance; and further medical attention by a doctor, who had deceased at the time of the trial, and by another doctor, who testified for the plaintiff. The plaintiff further testified that she suffered considerable pain, and that she was unable to work for some five months after the accident, characterizing her inability to walk or stand for any length of time because "my legs give out on me." There was also testimony from the plaintiff and her physician that she was suffering disturbances in her menstrual function, which condition was due, according to her physician, to an anteflexed uterus which, in his opinion, could have resulted from a blow in the abdomen, such as the plaintiff received in the accident.

On the other hand, the defendant introduced testimony of other medical witnesses, one of whom was an impartial expert, appointed by the court to examine the plaintiff. His testimony was to the effect that the malposition or anteflexion of the plaintiff's uterus is not of traumatic origin but is due rather to congenital causes. There was also evidence from the records of her employer that the

plaintiff actually worked within much less than five months, in contradiction of her testimony. This tended to cast some doubt upon her credibility, and might have affected the weight of her testimony concerning the nature, extent and consequences of her internal injury.

The question of whether this internal injury was due entirely to the accident, or whether it previously had existed, or whether, if it did so exist previously, there was some aggravation of the symptoms, because of the blow, were questions, among others, to be determined by the jury upon the conflicting evidence. The jury had the opportunity to see and hear the witnesses and the trial justice has approved their verdict. A reading of the transcript *as a whole*, without the benefit of seeing and hearing the witnesses, might indicate that the jury was generous with the plaintiff. We cannot say, however, that the damages were so excessive as to indicate that it resulted from mistake, passion, prejudice, or other improper influence. *Gallo v. Simpson Spring Co.*, 55 R. I. 410; *Faltinali* v. *The Great Atlantic & Pacific Tea Co.*, 55 R. I. 438. Under all these circumstances, the defendant's exception in the case of Rita Noel is not sustained.

However, the case of Omer Noel presents a different situation. It is inescapable that most of the verdict in his favor is based upon evidence of a possible future surgical operation upon Rita Noel, and its estimated cost.

The amount of actual expenses up to the time of trial, as proved in evidence and approved by the trial justice in his rescript, is $93. The trial justice did not approve the plaintiff's claim to earnings of Rita from a job she claimed was offered to her, but which she could not take because of her injury. We agree with this disapproval because the evidence thereon is flimsy, largely hearsay, and otherwise hardly to be considered as credible evidence. The remainder of the verdict, as approved, must therefore be attributable largely to the evidence in connection with the performance and cost of the operation.

In ordinary circumstances, the father would not be responsible legally for the expenses of an operation after Rita had reached her majority. Some evidence, therefore, is necessary that such an operation, if otherwise properly proven as required because of the accident, would be performed while the father was legally responsible for the expenses thereof. An examination of the transcript does not disclose evidence to support such a conclusion. While the jury may find a verdict upon legitimate inferences from other facts properly proven by evidence, they may not base such a verdict upon mere speculation. *Vrooman* v. *Shepard Co.*, 57 R. I. 445; *Sarcione* v. *The Outlet Co.*, 53 R. I. 76.

The testimony of the plaintiff's doctor, upon which the item was undoubtedly included, might be understood, at first hearing, to establish sufficiently the necessity for such an operation. Therefore it is understandable how the jury and the trial justice, who approved the verdict, could reasonably be misled by the apparent evidence. But a careful examination of the transcript discloses that the doctor testified for the plaintiff cautiously, as follows: "There might be a divided opinion upon that. I will state my opinion that *if* this young lady *should marry and care to have a family,* it would be *almost impossible for her to conceive* with the womb in the position it is in. Now, with regard to the pain and discomfort, she could overcome that by use of medicine, of course, but it would only be temporary for each period." (Italics ours.) It will be noted that his answer is *entirely* conditional. Only one person, namely Rita Noel, could satisfy the special conditions. But nowhere in the evidence does Rita supply the necessary connecting link. On the contrary, she was never informed by the doctor, or indeed by her parents or anybody, of the alleged seriousness of her condition and the possible necessity of an operation. There is no evidence that she cared to have the condition corrected, or would submit to any operation before reaching her majority. So

far as it related to her condition otherwise, her doctor testified that she would live just as long if no operation were performed. He also testified that he would not himself think of operating until he was satisfied, after several attempts, that the condition would not respond to reduction by manual manipulation. He had tried that method only once, which he says was unsuccessful. There is no evidence whatever that her father, the plaintiff here, knew of this particular condition of his daughter, or the need or probability of an operation; nor does it appear he would authorize one to be performed during Rita's minority. Strangely, Rita's mother, who accompanied her to the doctor after the accident, did not testify. In these circumstances, there was a definite gap in the proof, which rendered the performance of an operation, while Rita was a minor, and its expense, matters too indefinite, remote and speculative to be included in this verdict. The conclusion is inevitable that the jury's verdict was based upon a mistake with reference to this evidence.

The maximum amount of substantial damages proved by the evidence, if considered most favorably to the plaintiff, would be as follows: Dr. St. Jacques, $75; Memorial Hospital, $13; Dr. Reynolds, $35; loss of earnings (six Saturdays), $15; making a total of $138. As indicated, this is more than the amount approved by the trial justice in his rescript, and the first item above noted would be more credible if placed at $30, in view of the manner of its proof. But assuming for our purpose the correctness of the maximum amount of $138, we are of the opinion that the sum of $250 would be adequate and fair, upon the evidence, to pay the above amount and also to provide reasonable monthly medical care and medicine for the balance of Rita Noel's minority. The exception of defendant, therefore, in this case must be sustained.

The case of *Omer Noel* v. *Arthur Berard*, Ex. No. 7709, is remitted to the Superior Court for a new trial, unless the plaintiff shall file in that court. on or before March 19,

1937, a remittitur of all of said verdict in excess of $250. If the plaintiff shall file such remittitur, the Superior Court is directed to enter judgment for the plaintiff on the verdict, as reduced by the remittitur.

In the case of *Rita Noel, p.a.* v. *Arthur Berard,* Ex. No. 7710, the exceptions of the defendant are overruled, and the case is remitted to the Superior Court for entry of judgment on the verdict.

*Carroll & Dwyer, Edward F. J. Dwyer,* for plaintiffs.
*Frederick A. Jones,* for defendant.