JOHN PAYNE *vs.* UNITED ELECTRIC RAILWAYS COMPANY.

APRÍL 26, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J.   This is an action of trespass on the case for negligence to recover damages arising out of a collision between a trolley car operated by defendant's agent and servant and a taxicab driven by the plaintiff.   In the superior court a jury returned a verdict for the plaintiff, and thereafter the defendant's motion for a new trial was denied by the trial justice.   The case is before us on defendant's exceptions to the denials of its motions for a directed verdict and for a new trial, all other exceptions being expressly waived.

The evidence shows that the accident happened at the intersection of Gaspee and Francis streets, public highways in the city of Providence.   Gaspee street is about 31 feet

wide, runs generally east to west, and is regulated for one-way westerly traffic. Francis street is about 54 feet wide, runs generally north to south, and is regulated for two-way traffic.

The plaintiff in the early morning of January 7, 1947 was driving the taxicab westerly on Gaspee street, and the defendant's trolley car was being operated southerly down the hill on Francis street. It was dark and lights were lighted. The middle of Gaspee street was wet and slippery, there being ice in places and some snow and ice along the edges, and there was practically no other traffic in either direction.

Traffic at that intersection was regulated by lights on street poles located on the sidewalks at the corners. Apparently the lights operated in a cycle. When a trolley car came southerly down Francis street, the trolley pole at the rear of the car would activate a contact or "tripper" which started the cycle of changes in the traffic lights. This contact was on Francis street approximately 120 feet north from Gaspee street according to the municipal engineer who supervised its installation, and about 160 feet therefrom according to the defendant's operator.

The time element in the changing of the lights was apparently as follows. The light on Gaspee street remained green at all times until the contact was activated by the trolley pole of a car coming southerly down Francis street hill. Thereafter, but only at the conclusion of 35 seconds from the time when the Gaspee street light had started to be green, that light would change from green to yellow as a caution for the further period of 4½ seconds, and then would turn to red. Thereupon the Francis street amber bull's-eye for go-ahead traffic would appear and remain for 13 seconds, after which the Francis street light would immediately revert to red and the Gaspee street light would turn to green. In other words, if the light on Gaspee street turned green at approximately the same time that the trolley activated the contact on Francis street, the Gaspee street light would remain green for 35 seconds,

changing to yellow caution for 4½ seconds thereafter, and then would turn to red, whereupon the Francis street light would change to an amber bull's-eye for go-ahead traffic. Then after 13 seconds the Francis street light would change to red and the Gaspee street light would turn to green.

According to plaintiff's testimony, when he entered Gaspee street, some 200 or 300 feet easterly from the intersection, the light at the southeast corner was changing to green for westerly traffic on Gaspee street; and when he was about 100 feet from that intersection, he saw the trolley car coming southerly down Francis street at about the same distance northerly from the intersection. According to other evidence, both were going about 15 miles per hour. The plaintiff testified he then had the green light on Gaspee street and that it remained green during all the time up to the accident. If that were true, the other evidence showed that the Francis street light would have been red.

According to the defendant's operator, when the trolley pole activated the contact the front of the car was 40 feet nearer to the intersection. He then slowed the car down to about four miles per hour, and when the front of it was about 10 feet from the intersection he saw the light for Francis street on the southwesterly corner change to an amber bull's-eye, which was his go-ahead signal. He therefore continued without stopping and while picking up speed the collision took place within the intersection just southerly of the center thereof. The impact was at the left front of the vestibule door, and both trolley and taxicab went some 86 feet southerly on Francis street before they stopped. The front wheels of the trolley car were derailed and the taxi had been turned around.

The defendant first argues that it was entitled to a directed verdict because the plaintiff testified that he looked, at a point 100 feet easterly from the intersection, and saw the trolley car to his right 100 feet northerly therefrom, and did not notice its speed and did not look again toward the car but looked straight ahead, depending solely upon the

supposed continuance of the green light for Gaspee street traffic; that an operator of a vehicle at a street intersection must look when a look is efficient; and that he cannot depend solely on the continuance of a green light in disregard of the other observable conditions. Therefore it argues that, assuming there was some evidence to show negligence on the part of the defendant, it nevertheless was entitled to a directed verdict on the ground of plaintiff's contributory negligence as a matter of law, citing *Correia* v. *Cambra,* 51 R. I. 472; *Jacobson* v. *O'Dette,* 42 R. I. 447.

We cannot agree with this contention. Neither of these cases involved any traffic light, and in the case of *Jacobson* v. *O'Dette, supra,* the plaintiff admittedly never looked to his right or left at any time. Here the plaintiff, if the evidence is viewed most favorably to him, looked and saw the trolley car about 100 feet northerly of the intersection when he, plaintiff, had the Gaspee street traffic light in his favor, at which time the Francis street light was red and the car was apparently slowing down; and so he continued to follow the direction of the Gaspee street green light which did not change up to the time of the accident. In the absence of any evidence of unusual conditions which would indicate to a prudent driver that the defendant's operator was not going to yield to the traffic having the green light on Gaspee street, plaintiff on the evidence most favorable to him would have a right to assume that the defendant's operator intended to stop the car and not enter the intersection until the lights had changed in favor of Francis street traffic. See *Andrews* v. *Penna Charcoal Co.,* 55 R. I. 215; *Fournier* v. *Goulet,* 68 R. I. 63.

It is true that a plaintiff may not close his eyes to all observable conditions and depend for his own safety entirely upon a traffic light. Conceivably, notwithstanding a green light, there might be unusual conditions which would suggest to a prudent operator that there would be danger of a collision if he continued to cross the intersection. But here, if the evidence is viewed most favorably to the plain-

tiff on the motion to direct a verdict, there were no such unusual or dangerous conditions reasonably to be apprehended by a prudent driver or by the plaintiff had he looked again toward the car. There was conflicting evidence, however, that presented material issues of fact for determination by the jury.

Among other issues the jury had to determine whether the light for Gaspee street traffic was actually green at all times up to the accident as plaintiff testified, or whether it had changed before he entered the intersection and at a time when defendant's operator had the go-ahead signal on Francis street, as the defendant's evidence tended to show. If they found in favor of the plaintiff on these issues they would then have to determine upon all the evidence whether there were any unusual circumstances which a prudent driver reasonably would have apprehended as making it dangerous for him to continue his course in reliance solely upon the Gaspee street green traffic light. Unless the only reasonable conclusion from all the evidence, considered most favorably to the plaintiff, is that an ordinary prudent driver in the circumstances would not have acted as the plaintiff did, the question of his contributory negligence was for the jury. *Jacobson* v. *O'Dette, supra; Dembicer* v. *Pawtucket Cabinet & Builders Finish Co.*, 58 R. I. 451, 458. See also *Grimes* v. *United Electric Rys.*, 58 R. I. 458. The defendant's exception to the denial of its motion for a directed verdict is therefore overruled.

On the defendant's motion for a new trial it argues that the trial justice misconceived or misapplied certain testimony of the witness Fogarty. It is claimed that the trial justice did not have a clear concept of the workings of the traffic lights, which played an important part in the case, because he concluded that if the light was red for Francis street traffic when the trolley car was *approaching* the intersection, as Fogarty testified, it must then have been green for Gaspee street traffic, thus corroborating the plaintiff. The defendant contends that the trial justice thereby over-

looked the 4½ second interval during which the light for Gaspee street traffic would be a yellow caution even while the light for Francis street traffic remained red, which would tend to contradict the plaintiff's testimony. Defendant further argues that the trial justice also injected into the decision of the case a theory as to the probable cause of the accident, which was not alleged or relied upon by the plaintiff or tried out by the parties, namely, the alleged proximity of the contact or tripper to the intersection for which the defendant was not to be held responsible under the declaration in the instant case.

The plaintiff concedes that if certain portions of the decision are lifted from their context and considered alone, it can be argued that the trial justice may have misconceived a portion of the evidence, and that the decision perhaps would be open to some of the defendant's criticism. But he contends that the decision, if read as a whole in the light of all the evidence, indicates that the trial justice was merely making an "aside" concerning the proximity of the "tripper" and was not really relying upon that statement as a basis for his decision, and that the evidence otherwise supports the decision.

The injection of an issue which was not alleged or tried out, and for which the defendant may not have been responsible, is naturally confusing and makes us uncertain how much it was relied upon by the trial justice in evaluating the evidence. In our opinion when such statement is considered in conjunction with an apparent overlooking of the interval of time in the changing of the lights for Gaspee street traffic, the approval of the verdict by the trial justice on the motion for a new trial is not entitled to the persuasive force usually given to such a decision. But the plaintiff argues that, even assuming the trial justice's decision was thus deprived of its usual force, it then would be our duty to consider the transcript of evidence, not according to the rule as to ordinary preponderance under which the trial justice considered the motion for a

new trial, but rather in accordance with the appellate court rule which requires in such circumstances that the verdict should not be set aside unless we can say that the evidence *strongly* preponderates against the verdict. *Bradley* v. *Brayton*, 61 R. I. 44; *Monacelli* v. *Hall*, 71 R. I. 55, 62; *Audette* v. *New England Transportation Co.*, 71 R. I. 420.

We agree with that statement of the law. Accordingly we have read and considered the transcript in the light of the appellate court rule. The cycle of changes in the operation of the traffic lights and the relative conduct of the parties were important issues in the trial and determination of this case. The evidence is conflicting upon these issues and upon certain other material points to an extent that different minds might fairly come to different conclusions as to some or all of the controlling issues of fact, depending on which testimony is believed. From a mere reading of the transcript, without seeing and hearing the witnesses, we cannot say that the evidence *strongly* preponderates against the verdict. Unless we can go that far in accordance with the appellate court rule, which is applicable in the circumstances here, we are not justified in granting a new trial.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Aisenberg & Joslin, Alfred H. Joslin,* for plaintiff.

*Earl A. Sweeney, Frank J. McGee,* for defendant.