319 A.2d 21.

MARIA PESCATORE *et al. vs.* WILLIAM D. MACINTOSH *et al.*

MAY 1, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

140

JOSLIN, J. Maria Pescatore brought this civil action to recover damages for personal injuries sustained while riding as a passenger in an automobile owned by the defendant, William D. MacIntosh, and operated with his permission by his son, Greg, also a defendant. Maria was single and a minor when the suit was commenced, but married and attained her majority prior to the trial. She is now known as Maria Malak. Her mother, Lucy Grieco, is also a plaintiff and she seeks consequential damages. The case was tried before a judge and jury in the Superior Court. Prior to its submission to the jury, the parties agreed that if the award were for the plaintiffs it should be reported in a single sum. The jury found for the plaintiffs in the amount of $22,000, and judgments for that amount plus interest and costs were entered. The case is here on the defendants' appeal.

The litigation arises out of an automobile accident which occurred shortly before 2 a.m. on the morning of October 13, 1967, when the MacIntosh vehicle swerved from the highway and collided with a telephone pole on the northeast side of Oaklawn Avenue in Cranston, approximately 150 feet north of where it intersects Dean Parkway. Maria was a passenger in the front seat of the automobile at the time of the accident, and sustained serious injuries including facial lacerations, a possible fractured jaw and the loss of five teeth.

Just how the accident happened or what caused it is uncertain. Maria was unable to relate anything about the attendant circumstances because she was asleep when the accident occurred. That left Greg as the only known eyewitness. He stated at the trial that he was proceeding slowly and that as he made a right-hand turn onto Oaklawn Avenue from Dean Parkway, an overtaking vehicle forced him off the road and caused him to hit the telephone pole. Two police officers who arrived on the scene soon after the

incident also testified. One said that upon arrival he found Greg "in a very semi-unconscious state," "seriously injured" and unable to "relate as to how the accident occurred." The other testified that he had a brief conversation with Greg just before the latter became unconscious, and he quoted Greg as saying that he lost control of his own vehicle and then hit the pole. He further testified that Greg said nothing about being forced off the road by another vehicle.

Before us, defendants assign as errors the trial justice's overruling of their objection to the admission of evidence, his refusal to grant their motion to pass the case, his denial of their motions for a directed verdict and for a new trial, and his rulings with respect to plaintiffs' entitlement to damages.

### The Evidentiary Ruling

At the commencement of direct examination, Maria identified herself and furnished some general background information. She was then permitted to testify, over objection, that the accident occurred as she and Greg were returning to their homes from a restaurant in Warwick known as the Bank Cafe.

The defendants argue that this testimony should have been rejected on the basis of *Handy* v. *Geary,* 105 R. I. 419, 427-31, 252 A.2d 435, 440-42 (1969), where we held that it was error to admit evidence of the mere fact that an operator of a motor vehicle had been drinking intoxicating liquor, unless it reasonably establishes his intoxication to a degree indicative of unfitness to drive. We adopted that rule in *Handy* because in our judgment the prejudicial effect of that kind of evidence outweighs its probative value. *See* McCormick, *Evidence* §185 at 438-41 (2d ed. 1972); 6 Wigmore, *Evidence* §1904 at 574 (3d ed. 1940).

The question in this case, however, is not whether to apply the *Handy* rule, but whether to enlarge it to ban not

only evidence that an operator had a drink of intoxicating liquor, but also evidence that he was at a place where he might have had such a drink. The Pennsylvania court sees no "functional difference" between the two and holds that either one "* * * give[s] rise to the insidious inference that the individual involved was intoxicated or under the influence of alcohol * * *." *Morreale* v. *Prince*, 436 Pa. 51, 53, 258 A.2d 508, 508-09 (1969). *Accord, Miles* v. *Ryan*, 484 F.2d 1255 (3d Cir. 1973); *Sentz* v. *Dixon*, 224 Pa. Super. 70, 302 A.2d 434 (1973); *see also Cook* v. *Philadelphia Transp. Co.*, 414 Pa. 154, 199 A.2d 446 (1964).

The defendants urge upon us the Pennsylvania enlargement, but whether we should extend *Handy* that far is a question which, on the facts of this case, we need not decide. A comparison between the facts here and those in the Pennsylvania cases makes that clear. Testimony that Greg was at the Bank Cafe prior to the accident obviously is not susceptible of the same kind of inference as in *Cook* v. *Philadelphia Transp. Co., supra,* where the litigant had been at a nocturnal drinking establishment with the "image-creating sobriquet of the 'Crazy Bar'"; and while "* * * one might almost automatically form a recklessly exagerated notion of the inebriating proclivities of a place called the 'Crazy Bar,'" *Cook* v. *Philadelphia Transp. Co., supra* at 159-60, 199 A.2d at 448, the same connotation no more attaches to a restaurant known as the Bank Cafe that it would to a hotel or a friend's home, where one might stop for a cup of coffee, a snack or an early morning breakfast. In short, the reference to the Bank Cafe did not reasonably convey an innuendo that it was an establishment catering to late-night drinkers where Greg was likely to imbibe intoxicants to excess. Although the testimony that he had been there was wholly immaterial and irrelevant, it did not reasonably tend to exert an influence upon the determination of any real issue in the case and to admit it was there-

fore not reversible error. *Heuser* v. *Goldstein,* 107 R. I. 317, 321, 267 A.2d 420, 422 (1970); *State* v. *Reardon,* 101 R. I. 18, 23, 25, 219 A.2d 767, 771, 772 (1966).

### THE MOTION TO PASS

The defendants also argue that their counsel was so disparaged by the trial justice that it became impossible for them to have a fair and impartial trial. The colloquy[1] be-

---

[1]The text of the colloquy is:

"Recross-Examination by Mr. Borden

"Q Officer, you mean you can see 300 yards south of Dean Parkway once you get by all the obstructions on the corner, is that right?

"A After you get by the obstructions, yes.

"Q When the driver of a car gets down so as he is entering the intersection then he can see down?

"A Yes.

"Q And when he has the green light he has no reason to look to the left?

"Mr. Cuzzone: Objection, Your Honor.

"The Court: I didn't get the question.

"Mr. Cuzzone: That was no question.

(Question read)

"Mr. Borden: I will withdraw it.

"The Court: I don't know whether the jury heard the comment made by the attorney but I'll ask the jury to disregard it. It's improper for an attorney to make comment during the trial such as was made, and at the argument at the end they'll have plenty of time and opportunity to argue, but it's highly improper for an attorney to make a comment such as was made and I'll ask the jury to disregard it.

"Mr. Borden: I object to that statement and I asked a question.

"The Court: You did make a comment.

"Mr. Borden: I asked a question.

"The Court: You did make a comment.

"Mr. Borden: I asked a question.

"The Court: You made a comment which was improper.

"Mr. Borden: Your Honor please, I have a motion at this time.

"The Court: I beg your pardon?

"Mr. Borden: I have a motion.

"The Court: Well, I know your motion, it's denied.

"Mr. Borden: Thank you.

tween the trial justice and counsel containing that alleged disparagement commenced when defendants' counsel said to a witness, "And when he has the green light he has no reason to look to the left?" Objection was immediately interposed, and defendants' counsel promptly withdrew what he had said. At that point, the trial justice instructed the jury to disregard what he referred to as a "comment," and characterized it as "improper" and "highly improper."

It may well be that a mild rebuke was in order[2] for what was at best an argumentative question and at worst a misstatement of the applicable law.[3] Some more moderate phrase than "highly improper" probably would have sufficed and might even have avoided the ensuing short-lived verbal duel about whether counsel had asked a question or made a comment. But while it appears that counsel throughout was courteous and respectful, his insistence may have provoked the trial justice once again to characterize what had been said as "improper." Perhaps, too, the trial

---

"The Court: Let's proceed with the case.

"Mr. Borden: Thank you, your Honor. All right, that's all I have. Thank you.

"Mr. Cuzzone: Thank you, Officer DiBiasio. I have no further questions.

"The Court: I assume your motion is to pass the case, is that correct?

"Mr. Borden: Yes, Your Honor.

"The Court: Motion is denied."

[2]In exercising his duty to maintain a judicial atmosphere, a trial justice, within his discretion and as the occasion demands, may rebuke counsel for improper conduct, but never to the extent that it will impair the fairness and impartiality of the trial. *Cowan* v. *Carpenter,* 169 A. 485 (R. I. 1933); *Lemos* v. *Avila,* 145 A. 100 (R. I. 1929); *Laporte* v. *Cook,* 22 R. I. 554, 556, 48 A. 798, 799 (1901).

[3]In *Payne* v. *United Electric Rys.,* 75 R. I. 281, 285, 65 A.2d 713, 715 (1949), we said that an operator "* * * may not close his eyes to all observable conditions and depend for his own safety entirely upon a traffic light."

justice's alacrity in denying what he reasonably assumed was a motion to pass, even before it had been so identified, may be attributed to his desire to end the verbal stalemate and get on with the case.

In any event, the trial proceeded to a conclusion without any further difficulties of this nature. While defense counsel's sensitivities may have been bruised during the exchange, not every unguarded remark by a trial justice in the presence of a jury which indicates his displeasure with counsel's action is a ground for reversal. *Roy* v. *United Electric Rys.*, 52 R. I. 173, 180, 159 A. 637, 640 (1932). In our judgment what occurred here was nothing more than a tempest in a teapot; we are not prepared to say that what the trial justice said probably created an atmosphere so charged with personal feelings that it became well-nigh impossible for the jury to weigh the evidence fairly and impartially. Accordingly, it was not error for the trial justice to refuse to pass the case.[4] *State* v. *Kieon*, 93 R. I. 290, 298, 175 A.2d

---

[4]For an example of the kind of comment which exceeds permissible bounds and calls for reversal, attention is directed to the following exchange in *Roy* v. *United Electric Rys.*, 52 R. I. 173, 179-80, 159 A. 637, 640 (1932):

" 'The Court: I will rule this out. You have gone far enough. You are getting beyond what is fair. It is a fact that he explained certain things about buying corn, and he said there was only part of the money that they credited on the book, only for what was grown on their farm, but they did not credit what was bought and sold from others. You need not try that part of the case.

'Mr. Sweeney: I object to the court's remarks and ask for an exception.

'The Court: The court has a right to talk. You are not the whole show in this case.

'Mr. Sweeney: A very small part of it.

'The Court: Is there anything funny about it? You can see that your witnesses keep their faces smooth or I will excuse them. I have stood about all I can. Your other witnesses would better leave the room if they can't keep their faces straight. Other members of this court as well as myself have stood your petulance shown in these cases as long

284, 289 (1961); *see Roy* v. *United Electric Rys., supra; Schafer* v. *Thurston Mfg. Co.,* 48 R. I. 244, 247, 137 A. 2, 4 (1927).

THE DIRECTED VERDICT AND THE MOTION FOR A NEW TRIAL.

In passing on a defendant's motion for a directed verdict, a trial justice must view the evidence and the reasonable inferences therefrom in the light most favorable to the plaintiff and without regard to its weight or the credibility of the witnesses, and he should not direct a verdict unless the only reasonable conclusion on the evidence so viewed is that the plaintiff is not entitled to recover. *Cutroneo* v. *F. W. Woolworth Co.,* 112 R. I. 696, 697, 315 A.2d 56, 57 (1974); *Molinari* v. *Sinclair Refining Co.,* 111 R. I. 490, 494, 304 A.2d 651, 654 (1973).

In this case, as we have already indicated, one of the investigating police officers quoted Greg as saying that his automobile swerved from the road and hit the telephone pole, not by reason of a car cutting in ahead of him, but because he lost control of the vehicle. The defendants seek to belittle both the probative value and the inferential potential of that testimony. But it seems to us that when considered in the required light, that testimony standing alone was more than sufficient to warrant a finding of negligence. Its sufficiency to get the case to the jury is considerably enhanced, moreover, by evidence that (1) the police searched for and were unable to locate the eyeglasses Greg was required to wear while operating an automobile; (2) there were no skid marks on the highway at the point where Greg said he had been forced off the road; and (3)

---

as we can, and I will not stand it any longer. Go ahead and try your case.

'Mr. Sweeney: I don't want to incur the court's displeasure but I would like an exception.

'The Court: I don't want to tell you again to go on and try your case if you are going to, and if I have to, the United Electric Railways Company will have another counsel to try their cases.'"

148

the front end of the MacIntosh vehicle was severely damaged. It was, therefore, not error for the trial justice to refuse to direct a verdict in defendants' favor. *Redding* v. *Picard Motor Sales, Inc.,* 102 R. I. 239, 248, 229 A.2d 762, 768 (1967); *see State* v. *Kingman,* 104 R. I. 635, 247 A.2d 858 (1968).

With respect to the related ruling denying their motion for a new trial, defendants do not contend that the trial justice failed to perform the obligation imposed upon him by *Barbato* v. *Epstein,* 97 R. I. 191, 196 A.2d 836 (1964). Instead, they argue initially that the evidence in the case does not support an inference that Greg was negligent. That argument has already been rejected in our discussion of the directed verdict issue.

They further argue, however, that an inference of negligence, even if permitted by the evidence, should give way to what they say is the more probable contrary inference. That argument, while appropriate for the trier of fact to whom it was undoubtedly addressed, has no place in an appellate proceeding. *Fournier* v. *Ward,* 111 R. I. 467, 306 A.2d 802 (1973); *Marstan Corp.* v. *Centreville Realty Co.,* 106 R. I. 36, 256 A.2d 26 (1969).

## EXCESSIVE DAMAGES

The defendants assert that the trial justice erred when, despite their objection, he allowed the jury to decide whether plaintiffs should be permitted to recover present damages for future dental treatment necessary to correct a condition resulting from the injuries sustained in the accident.

While defendants do not challenge the rule which permits that kind of recovery in a proper case,[5] they argue that it

---

[5]It has long been settled that a plaintiff is entitled to recover present damages for future apprehended consequences upon a showing that such consequences are reasonably certain to ensue. *Labree* v. *Major,* 111 R. I. 657, 677-78, 306 A.2d 808, 819-20 (1973); *Reid* v. *Hassenfeld,* 85 R. I. 340, 344-45, 131 A.2d 681, 683 (1957); *Godfrey* v. *United Electric Rys.,* 70 R. I.

is apposite only in those situations where the record indicates with reasonable certainty what the cost of the future dental treatment will be.[6] They then point out that the testimony in this case, although it describes three different dental procedures available for the treatment of Maria's condition, fails to indicate which of those procedures is preferred and estimates the cost of only the most extensive of them. That estimate was $3,750.

We agree with defendants that the record is indefinite and uncertain concerning the cost of the future dental treatment which would be required. Accordingly, it left the jury no choice but to engage in speculation and conjecture in deciding whether to include in their verdict an amount for that cost. That will not do, because the law countenances only awards which are based on legally competent evidence instead of conjecture, speculation or mere possibility. *Noel* v. *Berard,* 57 R. I. 463, 466, 190 A. 686, 687 (1937); *MacGregor* v. *Rhode Island Co.,* 27 R. I. 85, 87, 60 A. 761, 762 (1905).

All that now remains for us is to decide what action to take. This decision is difficult because it is not possible for us to say with accuracy, in the absence of a special finding, whether the jury's award of damages included a sum for expenses for future dental care and, if so, what its amount

---

244, 250-51, 38 A.2d 308, 312 (1944); *Noel* v. *Berard,* 57 R. I. 463, 465-67, 190 A. 686, 687-88 (1937); *MacGregor* v. *Rhode Island Co.,* 27 R. I. 85, 87-88, 60 A. 761, 762 (1905).

[6]The defendants also argue that the absence of any evidence that Maria intended to submit to any future dental treatment constituted an additional reason why it was error to allow the jury to award damages for future dental treatment. The view we take of this case, however, makes it unnecessary for us to consider this argument. Yet, we would be remiss were we not to observe that *Reid* v. *Hassenfeld,* 85 R. I. 340, 344-45, 131 A.2d 681, 683 (1957), and *Noel* v. *Berard,* 57 R. I. 463, 465-67, 190 A. 686, 687-88 (1937), which appear to support defendants' position, were concerned with a husband's or a parent's right to recover consequential damages for future medical treatment.

was. While no answer will provide perfect justice, it seems to us that substantial justice can best be achieved if we remit the case to the Superior Court for a new trial on the question of damages only, unless the plaintiffs shall file in that court, on or before May 15, 1974, a remittitur of all of the verdict in excess of $18,250. If such a remittitur is filed, the Superior Court is directed to enter a new judgment on the verdict as thereby reduced plus interest and costs.

*John F. Cuzzone, Jr., Matthew F. Callaghan, Jr.,* for plaintiffs.

*Higgins, Cavanagh & Cooney, Kenneth P. Borden,* for defendants.