Frederick C. WHITE, Jr. et al.

v.

Alfred LeCLERC et al.

No. 78–374–Appeal.

Supreme Court of Rhode Island.

April 21, 1982.

John D. Lynch, Frederick A. Costello, Warwick, for plaintiffs.

Felix A. Appolonia, West Warwick, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal and a cross-appeal from a Superior Court judgment awarding damages to the plaintiffs in the amount of $4,500 for certain trees that were cut and carried away from the plaintiffs' property. In *White v. LeClerc*, R.I., 422 A.2d 1256 (1980), we remanded this case to the Superior Court justice to make findings concerning certain factual and statutory issues involved herein. The case is now here on appeal from the decision of the Superior Court justice on remand.

On July 21, 1977, plaintiffs, Frederick C. White, Jr., and Anna C. White, filed a complaint against defendants, Alfred LeClerc, Madeline LeClerc, and Robert Pingitore, d/b/a East & West Construction Co.[1] In their complaint, plaintiffs alleged that Robert Pingitore, acting as agent for defendants, severed and carried away four oak trees from plaintiffs' property, which abuts defendants' property in Coventry, Rhode Island. In their answer, defendants admitted that they and/or their agents cut the trees in order to build a swimming pool but denied that the trees were on plaintiffs' property.

This matter came before a trial justice sitting without a jury. At trial, it was

---

1. The case against defendant Robert Pingitore was severed for a jury trial.

established that the trees were on plaintiffs' property. Thereupon, plaintiffs' expert witness, Ronald Williams, an arborist and vice president and general manager of Forest Hills Nursery in Cranston, testified regarding the replacement value of the trees. He stated that after examining the tree stumps, he found that their diameters were as follows: two six-to-eight inch oaks, one eight-to-ten inch oak, and one ten-to-twelve inch oak. He estimated that their heights were twenty-four to thirty-two feet, thirty-two to forty feet, and thirty-six feet "or higher," respectively. Williams further indicated that he had no reason to believe that the trees were unhealthy. As to the replacement cost of the trees, Williams testified that he had sent Mr. White a quotation on September 26, 1977, for the following: two six-to-eight inch oaks at $2,000, one eight-to-ten inch oak at $2,500, and one ten-to-twelve inch oak at $4,500. On cross-examination, Williams stated that his total appraisal of $12,000 included "labor and material." In addition, he testified that the six-to-eight inch oaks were twenty to twenty-two years old, the eight-to-ten inch oak was twenty-six years old, and the ten-to-twelve inch oak was twenty-eight to thirty years old.

The defendants called defendant Robert Pingitore, a landscaper and horticulturist, as their expert witness. He testified that defendants had hired him to clear portions of their land for new landscaping and a swimming pool. Pingitore admitted that during such operations he had removed the four trees in question. Describing the trees as wild scrub oak, Pingitore testified that the diameters of the trees were as follows: one three-to-five inch oak, two four-to-six inch oaks, and one five-to-seven inch oak. He further stated that the heights of the trees were twelve feet, seven to fourteen feet, and eighteen to twenty feet, respectively. His opinion of the replacement costs of the trees was $35 for the three-to-five inch tree, $45 for each of the four-to-six inch trees, and $71 for the five-to-seven inch tree. On cross-examination Pingitore conceded that his estimate included only the cost of purchasing the trees from a nursery and did not include the cost of transportation and planting.

In his decision, the trial justice found that the deeds of the parties clearly established that the four trees had been on plaintiffs' property. Therefore, the justice held that defendant Alfred LeClerc trespassed upon plaintiffs' property by ordering his servant, Pingitore, to cut and sever the trees. In determining the amount of damages, the trial justice found that the testimony offered by defendants' expert witness was of "little value" because he testified only about the purchase price of the trees, not about the cost of digging out the trees, transporting them to the premises, replanting them, and setting them up. In considering the testimony of plaintiffs' expert witness, the justice found that the expert "grossly exaggerated" the replacement cost of the trees. Therefore, the justice held that a fair measure of damages was $4,500; and he ordered judgment against defendant LeClerc in such amount, plus costs.

On appeal to this court, we remanded the case to the Superior Court justice for further findings because the justice failed to refer to what evidence upon which he had relied in arriving at the award. *See White v. LeClerc, supra.* In addition, we held that it was unclear whether the justice had intended that a judgment be entered against Mrs. LeClerc. We further found that it was unclear whether G.L.1956 (1969 Reenactment) § 34–20–1[2] applied to the instant case and, if so, whether the trial justice considered the statute when assessing damages.

On remand, the trial justice found that there was no evidence of tortious conduct

2. General Laws 1956 (1969 Reenactment) § 34–20–1 provides as follows:
"Every person who shall cut, destroy, or carry away any tree, timber, wood or underwood whatsoever, lying or growing on the land of any other person, without leave of the owner thereof, shall, for every such trespass, pay the party injured twice the value of any tree so cut, destroyed, or carried away; and for the wood or underwood, thrice the value thereof; to be recovered by civil action."

by Mrs. LeClerc and therefore ordered that a judgment be entered in her favor. With respect to the issue of damages, the justice stated that the trier of fact was not required to accept as true the opinion of experts but was entitled to give that evidence such weight as in his judgment the testimony was worth. Therefore, the justice determined that the true value of the trees was somewhere between the value advanced by plaintiffs ($12,000) and that advanced by defendants ($196). Accordingly, he held that, after considering all the evidence, the amount of damages was $4,500. In addition, the justice noted that on direct examination plaintiffs' expert witness indicated that the replacement cost of the trees was $11,000. However, on cross-examination, the expert testified that the total cost was $12,000 and stated that this amount included "labor and material." The justice determined that the expert's testimony was not totally reliable because of the witness's confusion and indecisiveness. Finally, the justice held that § 34–20–1 was inapplicable to the instant case because plaintiffs failed to state a statutory claim in their complaint.

■ We first note that the trial justice properly determined that § 34–20–1 was inapplicable to the present case. The plaintiffs contend that they were entitled to twice the replacement cost of the trees because the pretrial order specifically stated that plaintiffs sought double damages under the statute. The defendants argue that the proper measure of damages is the diminution in value of plaintiffs' estate. Upon review of the record, however, we find that plaintiffs failed to file a claim for statutory relief and that they introduced testimony concerning the replacement costs of the trees. The defendants did not object to plaintiffs' testimony on replacement costs. We hold therefore that the parties had impliedly consented to replacement costs as

the proper measure of damages, and that therefore plaintiffs are not entitled to double damages under the statute.[3] See Webbier v. Thoroughbred Racing Protective Bureau, Inc., 105 R.I. 605, 619–20, 254 A.2d 285, 293 (1969); Super.R.Civ.P. 15(b).

We now turn our attention to whether the trial justice properly determined that the amount of damages was $4,500. The plaintiffs argue that the trial justice improperly rejected the $12,000 valuation by their expert "solely on the naked unsupported belief that the figure was too high." The defendants contend that plaintiffs' expert testimony was unreliable because the expert did not disclose the foundation upon which his opinion rested. The defendants, therefore, assert that plaintiffs failed to meet their burden of proof by not presenting sufficient evidence to warrant a damage award. Finally, defendants argue that the trial justice's decision on remand gave an explanation that was "little better than the lack of findings in support of the award" ordered in the first decision.

In the instant case, the trial justice clearly had an obligation to examine and consider the testimony of each expert witness on the issue of damages and to accord that testimony only such weight as the evidence, considered as a whole, and the inferences drawn therefrom reasonably warranted. See Nasco, Inc. v. Director of Public Works, 116 R.I. 712, 360 A.2d 871 (1976); Kyle v. Pawtucket Redevelopment Agency, 106 R.I. 670, 262 A.2d 636 (1970). Furthermore, his decision on the question of the credibility of witnesses carries great weight with this court. See Scotto v. Zifcak, R.I., 425 A.2d 512 (1981); Ducharme v. Champagne, 110 R.I. 270, 292 A.2d 224 (1972).

Thus, it was certainly a prerogative of the justice to reject the testimony of defendants' expert on the issue of damages as having "little value." Furthermore, the trial justice was entitled to label the testimo-

---

**3.** Because the actions of the parties precluded application of § 34–20–1 to the instant case, we do not find it necessary to resolve whether the statute is applicable to trespass cases involving the severance of shade or ornamental trees or to determine the proper measure of damages under the statute. Cf. Tortolano v. DiFilippo, 115 R.I. 496, 349 A.2d 48 (1975) (where damage to realty is temporary, cost of repair is proper measure of damages; where damage is permanent, diminution in value is more appropriate).

ny of plaintiffs' expert as "grossly exaggerated" and not "wholly reliable." However, the justice was unclear as to what portion of plaintiffs' testimony he accepted as credible in arriving at the award of damages. He simply held that, in his judgment, a fair measure of damages was $4,500. On remand, he added only that in his opinion the value of the trees was somewhere between the value advanced by plaintiffs ($12,000) and that advanced by defendants ($196).

■ We have previously held that an award of damages must rest on legally competent evidence establishing the nature and extent thereof and may not be the result of speculation or conjecture. *See Alterio v. Biltmore Construction Corp.*, 119 R.I. 307, 314, 377 A.2d 237, 240–41 (1977); *Pescatore v. MacIntosh*, 113 R.I. 139, 149, 319 A.2d 21, 27 (1974); *Fusaro v. Naccarato*, 103 R.I. 324, 325, 237 A.2d 545, 546 (1968). Although mathematical exactitude is not required, the damages must be based on reasonable and probable estimates. *See Rhode Island Turnpike & Bridge Authority v. Bethlehem Steel Corp.*, 119 R.I. 141, 379 A.2d 344 (1977). Because the trial justice did not state for the record upon what part of plaintiffs' expert testimony he relied in arriving at the $4,500 award, we cannot determine whether his award was based on legally competent evidence or whether he merely speculated in reaching the amount of damages. Therefore, we are still unable to conduct a meaningful review of the judgment below. *See White v. LeClerc, supra; Citizens for Preservation of Waterman Lake v. Davis*, 119 R.I. 684, 381 A.2d 1365 (1978).

Accordingly, we remand the case to the Superior Court with instructions that the trial justice make findings of fact concerning the issue of damages.[4]

4. The trial justice may conduct a new hearing on the issue of damages if, in his opinion, the taking of further testimony on such issue is warranted. We also note that technical manuals exist on the replacement values of trees. *See* Changing Times, March 1982, at 18 (citing various technical manuals).