ARTHUR MICHON *vs.* MARGARET L. WILLIAMS.

DECEMBER 10, 1963.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

Powers, J. This is an action of trespass on the case resulting from the defendant's alleged negligent operation of a motor vehicle on a highway in the city of Providence. The case was tried to a superior court justice, sitting with a jury, and resulted in a verdict of $2,000. It is before us on the plaintiff's bill of exceptions to certain evidentiary rulings, to the refusal of the trial justice to permit testimony of a witness in rebuttal, and to the denial of his motion for a new trial on the question of damages only or in lieu thereof an additur.

On October 25, 1963, after the case had been assigned for hearing in this court, plaintiff filed here a motion for a new trial on the ground of newly-discovered evidence which he alleges was, because of accident, mistake or unforeseen cause, not available at the time of trial in the superior court. It appears from the travel of the case that plaintiff's condition, discovered subsequent to the trial, suggested to him the necessity of a new trial on the merits rather than on the limited question of damages if justice were to be done. The motion was accompanied by an affidavit setting out

such alleged newly-discovered evidence and defendant filed a counter affidavit.

The statute on which the motion purports to be based, G. L. 1956, §9-21-6, provides as follows:

"When any person is aggrieved by any order, decree, decision, or judgment of the superior court or of any probate court or town council, and from accident, mistake, unforeseen cause, or lack of evidence newly discovered, has failed to claim or prosecute his appeal, or to file or prosecute a bill of exceptions, or motion, or petition for a new trial, the supreme court, if it appears that justice requires a revision of the case, may, upon petition filed within one (1) year after the entry of such order, decree, decision, or judgment, allow an appeal to be taken and prosecuted, or a bill of exceptions or a motion for a new trial to be filed and prosecuted, upon such terms and conditions as the court may prescribe."

The plaintiff's motion and bill of exceptions were argued together. In the interest of clarity we deem it advisable to consider first the contentions made relative to the motion.

The defendant contends that it is defective as to form in that the statute calls for the filing of a petition in this court for leave to file a motion for a new trial in the superior court; that the legislature never intended by the terms of the statute to grant the relief sought in the circumstances of this case; and that, assuming these contentions to be without merit, the so-called newly-discovered evidence is not such as would be sufficient for plaintiff to prevail. In our judgment there is merit in that contention.

This court had occasion to consider a similar question in *Calcagni* v. *Cirino*, 62 R. I. 49. There, while an appeal from a decree in equity was pending in this court, appellant filed a petition for a new trial on the ground of newly-discovered evidence pursuant to the statutory authority on which the instant motion is predicated. There, as here, both questions were heard together. At page 51 this court stated, "In the instant cause, the complainants had duly claimed and prose-

cuted their appeal, which was pending in this court when this petition was filed. The petitioners, therefore, have had all the benefit to which they would have been entitled under this statute." The construction thus given to the statute in question is clearly dispositive of the motion in the case at bar, and it is therefore denied.

We now turn to a consideration of the issues presented by plaintiff's bill of exceptions. The evidence relating to the accident for which plaintiff sues is clear and uncontradicted. It appears therefrom that at or about 2 p.m. on September 17, 1960, plaintiff was standing at the side of his car which was parked on Medway street in the city of Providence when defendant, turning left onto said street, drove her car with such force that it pushed plaintiff's car against him with sufficient violence to knock him down.

The evidence further discloses that plaintiff was taken to the Miriam Hospital by the Providence rescue squad where, after the taking of X rays and an examination by two physicians, he was permitted to leave at about 5 p.m.

As plaintiff knew no orthopedic doctor the hospital authorities referred him to Dr. Manoel A. Falcao of the hospital staff. He was not available on the day of the accident, however, and plaintiff returned to see him on the following day.

Doctor Falcao found that plaintiff was suffering from apparent injuries to the "cervical spine, right shoulder, chest and the *lumbosacral spine*." (italics ours) As a result of his examination, plaintiff returned for X rays which were taken in the doctor's office on September 20, 1960. His examination of plaintiff and of both sets of X rays substantially confirmed his original diagnosis.

The recommended treatment consisted of certain prescribed exercises, muscle relaxing and pain relieving medication, the wearing of a back support and chest binder, and sleeping on a firm mattress. The plaintiff was totally in-

capacitated for work and continued to see Dr. Falcao for several months.

It is also undisputed that at the time of the accident and for eleven years prior thereto plaintiff had worked for Sayles Finishing Plant, which work was of a heavy nature. He was able to return to light work November 1, 1960, at the same weekly wage he had been earning and continued so to work until sometime in January 1961, when Sayles Finishing Plant ceased operations. The plaintiff was unable to find light work until January 1962 when he was employed for some four months by Shore Line Footwear and was paid $42 weekly. On May 15, 1962, he obtained light work with Ansonia Wire & Cable Company, where he was still employed at the time of the trial, earning approximately the same wages that he had earned with Sayles Finishing Plant.

It is Dr. Falcao's testimony that plaintiff showed marked improvement in October and November of 1960 and was discharged from his care on December 10, 1960 with instructions to continue the exercises previously prescribed.

Thereafter, on February 11, 1961, plaintiff returned to Dr. Falcao and stated that he had been confined to his bed since January 27 when "while attempting to rise from a sitting position he developed a severe pain in his lower back and for a moment he was unable to stand erect." On examination the doctor found a localized tenderness at the level of the fifth lumbar and the first sacral vertebra. The plaintiff continued under the doctor's care keeping four appointments and showing marked improvement, but failed to keep an appointment sometime in May, not returning until August 10, 1961. It appears, however, that it was at about this time that plaintiff was hospitalized with urticaria or hives resulting from a reaction to medication. It is not claimed that loss of wages or expenses incurred by reason thereof were attributable to the accident.

Doctor Falcao further testified that he again took X rays

on February 11, 1961 and they indicated "a narrowing of the vertebral spaces between the fifth lumbar vertebra and the first sacral vertebra and this was associated with what we call spondylolisthesis of L 5 - S 1, grade one." He described spondylolisthesis as "a slipping of one vertebra over the other, generally common between L 5 - S 1."

During plaintiff's visits in October and November of 1961, Dr. Falcao recommended hospitalization for further studies including a myelogram and on December 11, 1961, the doctor recommended surgery, but plaintiff refused for financial reasons. On March 13, 1962, further X-rays were taken by Dr. Louis M. Sod, a radiologist, to whom plaintiff was referred by Dr. Falcao. A study of these X-rays, Dr. Falcao testified, confirmed the diagnosis of spondylolisthesis.

Although plaintiff continued to see Dr. Falcao during 1962, he was unable to make any visit from May 5 of that year until December 15, because of hospitalization resulting from a heart attack in June. As in the case of the indisposition resulting from urticaria, no claim was made that the heart condition resulted from the injury of September 17, 1960. Doctor Falcao testified that he had last seen plaintiff on January 5, 1963, at which time plaintiff's condition remained unchanged and surgery was definitely desirable.

On cross-examination, the doctor conceded that plaintiff was born with a condition known as spondylolysis, which is congenital and described as a lack of fusion between the lumbar and sacral vertebrae. He testified that the condition is not uncommon in that approximately one out of twenty persons is born with such a condition. He further admitted that in addition to his examination, including a study of the X-ray reports, he relied heavily on the patient's complaints of subjective symptoms.

Doctor Henry B. Fletcher, a qualified orthopedic surgeon, testified that he examined plaintiff on behalf of defendant

on October 10, 1960. At that time he found plaintiff suffering from an acute sprain of the sacroiliac region, but expected the condition would clear up within a reasonable time. It is also his testimony that he did not refer plaintiff for X-ray studies since at the time of his examination he did not believe such to be necessary. He admitted that spondylolisthesis is difficult to diagnose without X-rays and that in any event the day on which he examined plaintiff was too soon after the accident.

Doctor G. Edward Crane, also a qualified orthopedic surgeon, testified that he examined plaintiff at defendant's request on October 11, 1961. He obtained plaintiff's history from Dr. Falcao, including the X-rays taken September 20, 1960 and those after the visit of February 11, 1961. Because he did not agree with Dr. Falcao's reading of the 1961 X-rays as indicating the existince of spondylolisthesis, Dr. Crane referred plaintiff to Dr. William J. Butler, roentgenologist or X-ray specialist, for further X-ray studies. On examining the X-rays taken by Dr. Butler, he found no indication that the fifth lumbar vertebra had slipped on the sacrum, either forward or backward, and so concluded that plaintiff was not suffering from spondylolisthesis.

The X-rays did reveal, he agreed, that plaintiff did have the condition known as spondylolysis, which he described as a congenital abnormality. He also agreed that this condition was not uncommon and testified that it could produce pain without the intervention of an injury. On cross-examination, however, he conceded that the condition spondylolysis could be aggravated into spondylolisthesis by a single trauma of sufficient force. He testified that in his experience he knew of but one such instance.

He insisted that at the time he saw plaintiff no treatment was necessary other than the wearing of the back support which plaintiff was continuing to wear. However, he agreed that plaintiff was in no condition to attempt heavy work.

The defendant called Dr. Butler who testified that he, or one of his associates, had taken X-rays on October 11, 1961 at the request of Dr. Crane. He described his findings in great detail and by pointing out specific orthopedic conditions, as revealed by the X-rays, attempted to demonstrate the basis for his conclusion that plaintiff did not have spondylolisthesis. He also found the congenital anomaly of nonfusion or spondylolysis.

On cross-examination he conceded that the X-rays taken by Dr. Falcao in February 1961 indicated that plaintiff did have spondylolisthesis but that there were some features of those X-rays which were unsatisfactory. Those taken by him, he testified, clearly revealed the congenital anomaly but indicated that spondylolisthesis was not present. He frankly conceded, however, that even with the aid of his own X-rays it was a close question.

After defendant had rested, plaintiff offered to produce Dr. Sod in rebuttal of Dr. Butler's testimony as to the interpretation Dr. Butler placed on the X-rays taken by him. He argued that Dr. Butler having qualified as a roentgenologist, plaintiff should now be afforded the opportunity to present the interpretation of a qualified roentgenologist called by him. The trial justice refused to permit rebuttal by Dr. Sod and plaintiff duly excepted.

The plaintiff has briefed and argued seven exceptions taken to evidentiary rulings. We have examined each of them carefully and in our judgment none has merit. They either related to an attempted introduction of new matter during cross-examination, would have sought to elicit information based on speculation, or were inadmissible for the reason that no proper foundation had been laid. Exceptions two through eight are therefore overruled. The first exception having been neither briefed nor argued is deemed to have been waived.

The plaintiff's ninth exception is to the refusal by the trial justice to permit plaintiff to call Dr. Sod in rebuttal

of the expert testimony given by Dr. Butler. The trial justice in so refusing commented that the testimony to be offered through Dr. Sod was part of plaintiff's case in chief, and that in the exercise of his discretion he would refuse to receive the proffered evidence.

It has been held by this court that a plaintiff may not hold back a part of his case and attempt to introduce it in rebuttal without running the risk of having the trial justice refuse to permit him to do so. Such refusal, we held, was within the judicial discretion of the trial justice. *Souza* v. *United Electric Rys.*, 49 R. I. 430.

The plaintiff in his declaration charged defendant with negligence resulting inter alia in spondylolisthesis, and it was clearly his obligation to adduce all of the evidence tending to prove that allegation during the presentation of his case in chief. Moreover, during the cross-examination of Dr. Falcao, plaintiff objected to a reference to Dr. Butler, but withdrew his objection on being assured that Dr. Butler would testify. In such circumstances it cannot be said that the trial justice's refusal constituted an abuse of discretion. This exception is overruled.

The plaintiff's final exception, taken to the denial of his motion for a new trial or an additur is more troublesome. In denying the motion, the trial justice held that on the state of the evidence the jury was warranted in finding that, after plaintiff's discharge by Dr. Falcao on December 10, 1960, plaintiff had sustained no damages for which defendant would be responsible. In the opinion of the trial justice, the evidence as to plaintiff's recurring incapacity resulting from the injury raised a simple issue of credibility. The jury, he felt, believed Doctors Fletcher, Crane and Butler and did not believe plaintiff or the medical evidence furnished by him. Exercising his independent judgment, as required by our rule, he found nothing in the evidence which would warrant him in taking a different view thereof than

that reached by the jury. It was his judgment, therefore, that since plaintiff's loss of wages, medical expenses and property damages through December 10, 1960 were in the aggregate something less than $1,000, the verdict responded to the evidence and should not be disturbed.

In our judgment, however, the trial justice misconceived the issue and the evidence relative thereto. If the issue of whether plaintiff's impaired physical condition after December 10, 1960 depended in turn on whether plaintiff was suffering from spondylolisthesis, there would be merit in the conclusion reached by him. We think rather that the question was whether plaintiff's reduced earning capacity and accompanying pain after December 10, 1960, were a consequence of any injury to his back, regardless of whether such injury was spondylolisthesis or some other ailment caused by defendant's negligence. This is so, in our opinion, because it is only on the issue of whether plaintiff's injury resulted in spondylolisthesis that credibility became the determining factor.

Doctor Fletcher did not examine plaintiff after December 10, 1960 and Dr. Butler never examined him at all, being concerned only with whether the X-rays taken by him eliminated the probability of spondylolisthesis. Doctor Crane, on the other hand, examined plaintiff some thirteen months after the accident and at that time limited plaintiff's capacity to light work. He minimized the amount of and conditions under which plaintiff experienced pain, but it cannot be said that he found plaintiff completely recovered from the effects of the accident.

Asked by defendant what conclusion he had reached as to whether plaintiff was suffering from any back injury referable to the injury sustained on September 17, 1960, Dr. Crane replied, "That the man had pain when his trunk was flexed backward and it was quite probable that he had some difficulty at the lumbosacral joint." This finding was

consistent with the original diagnosis made after the accident.

The trial justice further indicated that the jury's failure to give credibility to plaintiff's complaint may have been influenced by his failure to keep several appointments with Dr. Falcao, permitting extended intervals of time to elapse between visits on such occasions. It is apparent from his decision that this circumstance influenced the trial justice. Here again he misconceived or overlooked material evidence. The record establishes as a fact that plaintiff missed two appointments and the long intervals of time occurred when he was hospitalized with urticaria in the first instance and with a heart attack in the second.

In the view we take of the evidence overlooked or misconceived by the trial justice, the verdict, although responsive to a recovery on December 10, 1960, was not responsive to damages which might reasonably have been assessed for an injury that was continuing to provide difficulty for plaintiff as late as October 11, 1961.

Notwithstanding our decision as to the plaintiff's last considered exception, we deemed it advisable to consider all of his other exceptions in the event that by reason of any of them he might have been entitled to a new trial on the merits.

The plaintiff's exception to the denial of his motion for an additur or in lieu thereof a new trial on the question of damages is therefore sustained, and the case is remitted to the superior court for a new trial on the question of damages.

*William R. Goldberg, Ronald R. Gagnon,* for plaintiff.

*Higgins, Cavanagh & Cooney, Joseph V. Cavanagh,* for defendant.