306 A.2d 808.

FRANCIS LABREE *et ux.* and COLLEEN LABREE, *p.p.a. vs.* SUSAN L. MAJOR *et al.*

JUNE 22, 1973.

PRESENT: Roberts, C. J., Paolino, Powers and Kelleher, JJ.

658

ROBERTS, C. J. This is a civil action brought to recover damages for injuries alleged to have been sustained by the plaintiffs as a result of a collision between two motor vehicles which occurred in Fall River, Massachusetts, on February 27, 1966. At the time of the accident, the plaintiffs, Francis Labree, and his pregnant wife, Sally R. Labree, were passengers in a motor vehicle owned by the defendant, Yvonne Major, and operated by her daughter, the defendant, Susan L. Major (now Susan L. Vierra). The plaintiff Sally Labree seeks to recover for personal injuries, while Colleen Labree, her daughter born two months after the accident, seeks to recover for pain and suffering following

prenatal injuries sustained at the time of the accident. Francis Labree, the husband of Sally and father of Colleen, is suing for the expenses of medical treatment and hospitalization of his wife and child.

The case was tried to a jury in the Superior Court, and at the close of evidence defendants' motion for a directed verdict was denied. Thereafter, the jury returned a verdict for plaintiff Colleen in the sum of $23,000 and for plaintiff Francis in the sum of $471.85. Initially, the jury returned a verdict for plaintiff Sally but without any award of damages. After appropriate instructions given by the trial justice, the jury in the case of Sally Labree returned a verdict for defendants.

Subsequently, each of the parties moved for a new trial. The motion of defendants and that of Francis Labree were denied by the trial justice. However, he ordered an additur in the amount of $17,000 for the child, Colleen Labree, and granted a new trial on the issue of damages only if the additur was not consented to. Being of the opinion that the jury should have made an award of damages to plaintiff Sally Labree, he found that "the issue of liability is so clear" and granted plaintiff Sally Labree a new trial on the issue of damages only. The defendants are prosecuting an appeal to this court from the judgments entered.

On February 27, Susan Major left her home in Cumberland, Rhode Island, to visit the Labrees at their home in North Attleboro, Massachusetts. While there, it was decided to visit the battleship Massachusetts, which is moored in Fall River harbor. The defendant Susan drove her mother's car with her fiancé, Donald R. Vierra, beside her in the front seat, while Sally and Francis Labree were riding in the rear seat. While moving along Davol Street in Fall River in heavy stop-and-go traffic, the car being operated by Susan struck the rear of a car ahead of it. According to the testimony of Sally Labree, the impact threw her

forward so that her stomach struck the front seat and she received a cut over her eye when she came into contact with the back of Vierra's head.

## I.

### Choice of Law

The defendants contend that the trial justice erred in applying the law of the forum, Rhode Island, with respect to the standard of care owed to passengers in a motor vehicle and with respect to the right of recovery for prenatal injuries. The law of Massachusetts, they assert, requires that a guest in a motor vehicle prove gross negligence on the part of the operator in order to recover damages and that the law of that state permits recovery for prenatal injuries only upon a showing that at the time the injuries were sustained the unborn child was viable. They urge that the Massachusetts law should have been applied in this case and on this base their contention that the denial of their motion for directed verdict was error.

In *Woodward* v. *Stewart*, 104 R. I. 290, 243 A.2d 917 (1968), this court abandoned the *lex loci delicti* doctrine for choice of laws in tort cases. In discarding *lex loci*, our court joined those states in the forefront of the emerging trend in the law of conflicts. While modern authorities nearly unanimously agree that *lex loci* was an inappropriate doctrine to use for choice of law in our mobile society, no uniformity of approach exists to determine the doctrines which should replace it.

The conflicts problem of the case at hand has proved particularly troublesome for courts and commentators. Forums which hold their drivers to a duty of reasonable care towards their passengers have had difficulty in choosing which law to apply in cases where the accident occurred in a state which only required their drivers to avoid being grossly negligent towards their guests. The variables in

such cases are the residence of the host-driver, the residence of the guest-passenger, the locus of the accident, and the choice of the forum. Numerous combinations of circumstances have arisen in the reported cases. Unfortunately, no uniform pattern of decisions has emerged from these cases. However, the Court of Appeals for the State of New York has dealt with the choice-of-law issue in suits by automobile guests against their hosts on at least five occasions in the last ten years. A review of their experience illustrates the confusion and the seeming inconsistencies generated by this particular choice-of-law problem.[1]

In *Babcock* v. *Jackson,* 12 N.Y.2d 473, 191 N.E.2d 279, 240 N.Y.S.2d 743 (1963), the plaintiff was a passenger in a car driven by a friend on a week-end trip to Canada. While in the Province of Ontario, the car went off the highway into a stone wall, and the plaintiff was seriously injured. Both the plaintiff and driver were New York residents, and the car was registered and insured in New York. The plaintiff brought suit in New York. Ontario law barred automobile guests from recovering any damages from their hosts, while New York recognized no such bar. The defendant moved to dismiss the complaint on the ground that the law of the place where the accident occurred governs and that Ontario's guest statute barred recovery.

---

[1]The issue of which state's law to apply to accidents with multijurisdictional contacts when the guest statute is interposed as a defense has also been dealt with by many other courts. However, no court has had to deal with it as frequently as in New York. Some of the cases from other jurisdictions dealing with this issue are: *Pryor* v. *Swarner,* 445 F.2d 1272 (2d Cir. 1971); *Foster* v. *Leggett,* 484 S.W.2d 827 (Ky. 1972); *Beaulieu* v. *Beaulieu,* 265 A.2d 610 (Me. 1970); *Bolgream* v. *Stich,* 293 Minn. 8, 196 N.W.2d 442 (1972); *Gagne* v. *Berry,* N. H., 290 A.2d 624 (1972); *Clark* v. *Clark,* 107 N. H. 351, 222 A.2d 205 (1966); *Pfau* v. *Trent Aluminum Co.,* 55 N. J. 511, 263 A.2d 129 (1970); *Mullane* v. *Stavola,* 101 N. J. Super. 184, 243 A.2d 842 (1968); *Cipolla* v. *Shaposka,* 439 Pa. 563, 267 A.2d 854 (1970); *Conklin* v. *Horner,* 38 Wis.2d 468, 157 N.W.2d 579 (1968); *Heath* v. *Zellmer,* 35 Wis.2d 578, 151 N.W.2d 664 (1967).

The trial court granted the motion, but the Court of Appeals, in a landmark decision, rejected the traditional *lex loci* rule and refused to apply Ontario law. The court reiterated its holding in *Auten* v. *Auten,* 308 N.Y. 155, 161, 124 N.E.2d 99, 102 (1954), that "* * * the place 'having the most interest in the problem' [should have] paramount control over the legal issues arising out of a particular factual context * * * [and] the forum [should] apply the policy of the jurisdiction 'most intimately concerned with the outcome of [the] particular litigation.' (3 Utah L. Rev., pp. 498-499." *Babcock* v. *Jackson, supra* at 481-82, 191 N.E.2d at 283, 240 N.Y.S.2d at 749.

The court in *Babcock* proceeded to weigh the interests of New York and Ontario in the litigation. It found that Ontario's guest statute was designed to prevent fraudulent and collusive claims by passengers against Ontario defendants and their insurance companies. Since the defendant and his insurer were from New York, Ontario had no real interest in the litigation. New York, on the other hand, required negligent tortfeasors to compensate their guests; and New York had a valid interest in granting a remedy to a New York guest against his New York host for injuries even though the tortious conduct occurred in Ontario. Since New York had the strongest interest in the resolution of the issue presented by the case, the court held that New York law applied.

*Babcock* v. *Jackson, supra,* was followed by *Dym* v. *Gordon,* 16 N.Y.2d 120, 209 N.E.2d 792, 262 N.Y.S.2d 463 (1965). The defendant and the plaintiff were New York domiciliaries studying at the University of Colorado. The plaintiff was injured in Colorado when an automobile driven by the defendant collided with another vehicle. The plaintiff brought suit in New York, and the defendant asserted as a defense Colorado's "guest statute," which permitted a guest to recover only upon a showing of gross negligence.

The court found that the Colorado statute, in addition to preventing fraudulent claims against Colorado insurers, was intended to grant injured parties in other cars priority over the "ungrateful guest" in the assets of the negligent driver. Relying on the facts that the accident involved injured third parties and that the relationship between the guest and the host arose in Colorado, the court concluded that Colorado had a sufficient interest in the case to require application of its law. However, three judges dissented. Judge Fuld, finding no material distinction in the factual situation in the Colorado case from that in *Babcock*, wrote: "The view expressed by the majority is inconsistent not only with the rationale underlying *Babcock* but with the rule there expressly stated, that the law to be applied to resolve a particular issue in a tort case with multi-jurisdictional contacts is 'the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern' with the matter in issue and 'the strongest interest' in its resolution. (12 N.Y.2d, at pp. 481, 484 [ , 191 N.E.2d at 283, 285, 240 N.Y.S.2d at 749, 752])." *Dym* v. *Gordon, supra* at 129, 209 N.E.2d at 797, 262 N.Y.S.2d at 470.

The New York Court of Appeals faced a similar fact pattern for a third time in *Macey* v. *Rozbicki*, 18 N.Y.2d 289, 221 N.E.2d 380, 274 N.Y.S.2d 591 (1966). The plaintiff was visiting the defendants' summer home in Ontario, and, while there, she was injured in an automobile accident as a passenger in a car driven by one of the defendants. Both the plaintiff and the defendants were residents of New York where the car was registered and insured. Suit was instituted in New York, and the defendants interposed the Ontario guest statute as a defense. The court compared the *Babcock* and *Dym* decisions and found the notable differences. In *Dym*, the court said, the parties had planned long stays in Colorado and their meeting there

was by chance. The court concluded that the factual situation in *Macey* was more like that of *Babcock* and applied New York law. Judge Keating concurred, but he felt that *Macey* was indistinguishable from *Dym* and that *Dym* was irreconcilable with *Babcock*. He concluded that *Dym* should no longer be followed.

Judge Keating had the opportunity to abandon the *Dym* holding in *Tooker* v. *Lopez,* 24 N.Y.2d 569, 249 N.E.2d 394, 301 N.Y.S.2d 519 (1969). Two Michigan State University coeds, both New York residents, were killed in an automobile crash in Michigan. The passenger's administrator sued the father of the decedent driver in New York. The defendant asserted the Michigan guest statute as a defense. Judge Keating admitted the inconsistencies of the court's previous opinions on the issue of which law to apply in accidents with multi-jurisdictional contacts where a guest statute is interposed as a defense and set out to resolve them. He wrote that "* * * the legitimate purpose of the [guest] statute—prevention of fraudulent claims against local insurers or the protection of local automobile owners —is furthered by increasing the guest's burden of proof. This purpose can never be vindicated when the insurer is a New York carrier and the defendant is sued in the courts of this State. Under such circumstances, the jurisdiction enacting such a guest statute has absolutely no interest in the application of its law." *Tooker* v. *Lopez,* *supra* at 575, 249 N.E.2d at 397, 301 N.Y.S.2d at 524. He then pointed out that New York had evidenced a "grave concern" for affording recovery for persons injured by the negligent acts of others. Thus, he concluded, New York law applied.

In *Tooker* a Michigan passenger also was injured. Judge Keating refused to answer the question not before him of whether the Michigan guest statute would defeat her recovery. However, he does suggest in his opinion that he

would not have allowed the Michigan guest statute to bar the girl's recovery. *Tooker* v. *Lopez, supra* at 580, 249 N.E.2d at 400-01, 301 N.Y.S.2d at 528.

The New York court faced a fact situation analogous to the one in the case at hand in its most recent encounter with a guest statute. In *Neumeier* v. *Kuehner,* 31 N.Y.2d 121, 286 N.E.2d 454, 335 N.Y.S.2d 64 (1972), the plaintiff's decedent, an Ontario resident, was killed when a car driven by the defendant's decedent, a New York domiciliary, collided with a train in Ontario. Suit was brought in New York, and the defendant asserted the Ontario guest statute as a defense. Chief Judge Fuld wrote the majority opinion. He first distinguished *Tooker* v. *Lopez, supra,* for there the passenger and driver were both from New York. He also cited authority for the proposition that the only true purpose of the Ontario guest statute was to protect owners and drivers against ungrateful guests. He then recounted his concurring opinion in *Tooker.* In that opinion, he said the time had come to formulate certain rules regarding guest statutes and choice of laws. Thus, he proposed the following principles:

"1. When the guest-passenger and the host-driver are domiciled in the same state, and the car is there registered, the law of that state should control and determine the standard of care which the host owes to his guest.

"2. When the driver's conduct occurred in the state of his domicile and that state does not cast him in liability for that conduct, he should not be held liable by reason of the fact that liability would be imposed upon him under the tort law of the state of the victim's domicile. Conversely, when the guest was injured in the state of his own domicile and its law permits recovery, the driver who has come into that state should not—in the absence of special circumstances—be permitted to interpose the law of his state as a defense.

"3. In other situations, when the passenger and the driver are domiciled in different states, the rule is necessarily less categorical. Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants. (Cf. Restatement, 2d, Conflict of Laws, P.O.D., pt. II, §§ 146, 159 [later adopted and promulgated May 23, 1969].)" *Neumeier* v. *Kuehner,* 31 N.Y.2d at 128, 286 N.E.2d at 457-58, 335 N.Y.S.2d at 70.

Finding that the facts of *Neumeier* fell within Rule No. 3 and that New York's substantive law would not be impaired if the Ontario resident were denied recovery, he concluded that the Ontario guest statute was applicable as the law of the state where the accident occurred.

Judge Bergan dissented in *Neumeier* v. *Kuehner, supra.* He felt *Tooker* v. *Lopez, supra,* set out a clear rule for decision when it said that the purpose of another state's guest statute can never be vindicated when the suit is brought in New York against a New York driver insured in New York. Therefore, he concluded, Ontario had no interest in the case, and New York law should apply.

Our review of the New York experience with the issue at hand[2] emphasizes the difficulty one court can have in weighing the competing interests of different states in determining what law to apply to a particular case. The opinions of

---

[2]The following table is a capsule view of the five New York Court of Appeals cases:

| Case | Host-Auto | Guest | Locus/Guest Statute | Law Applied |
|------|-----------|-------|---------------------|-------------|
| Babcock v. Jackson | N.Y. | N.Y. | Ont. | N.Y. |
| Dym v. Gordon | N.Y. | N.Y. | Colo. | Colo. |
| Macey v. Rozbicki | N.Y. | N.Y. | Ont. | N.Y. |
| Tooker v. Lopez | N.Y. | N.Y. | Mich. | N.Y. |
| Neumeier v. Kuehner | N.Y. | Ont. | Ont. | Ont. |

the New York court—majority, concurring, and dissenting —reflect the varied approaches to conflicts litigation and are representative of the different positions taken by other jurisdictions facing the same issue. Thus, we do not approach the case at hand with the expectation that we will find a universally accepted answer to the question of when to apply "guest statutes" in cases with multi-jurisdictional contact. However, we do hope to benefit from the experience of other jurisdictions so that we can avoid potential confusion and seeming inconsistencies in resolving the issue.

We are required, in deciding this case, to weigh the interests of Massachusetts and Rhode Island in this litigation. *Woodward* v. *Stewart,* 104 R. I. at 300-01, 243 A.2d at 923-24. This case is different from most of the guest statute cases in that the guests and the host are from different states. Moreover, Massachusetts law, if applied, would deny recovery to a Massachusetts plaintiff against a Rhode Island defendant, while Rhode Island law would hold the Rhode Island defendant liable to a Massachusetts plaintiff. Interest analysis, however, is not merely a determination of how a state may best protect its citizens as litigants. Rather, where the laws of two states with contacts in a case point to opposite results, interest analysis requires an assessment of the policy underlying each state's law. From such an assessment, a court can determine which result will advance the policy of one state without frustrating the result of the other.

Turning to the case at hand, Massachusetts law holds that one who injures another while conferring upon him a gratuitous benefit is not liable to him for less than gross negligence. This rule, of judicial origin, has been applied to cases where guests in automobiles sue their hosts. *Bagley* v. *Burkholder,* 337 Mass. 246, 149 N.E.2d 143 (1958); *Massaletti* v. *Fitzroy,* 228 Mass. 487, 118 N.E. 168 (1917). The principle, though, is not limited to the operation of

motor vehicles. *Beaulieu* v. *Lincoln Rides, Inc.*, 328 Mass. 427, 104 N.E.2d 417 (1952). The basis of the rule was to protect one who renders a service gratuitously from ungrateful guests. As applied to this case, Massachusetts has no real interest in protecting a Rhode Island driver against ungrateful guests. Moreover, the enactment of legislation in Massachusetts for compulsory automobile liability insurance clouds the rationale of the policy that a gross-negligence standard was necessary to protect against ungrateful guests. *Brown* v. *Merlo*, 8 Cal.3d 855, 867-69, 506 P.2d 212, 221-22, 106 Cal.Rptr. 388, 397-98 (1973); Ehrenzweig, *Guest Statutes in the Conflict of Laws—Towards a Theory of Enterprise Liability under "Foreseeable and Insurable Laws,"* 69 Yale L.J. 595, 599 (1960).

Also important in interest analysis is the strength with which a state adheres to the policy sought to be applied. Reese, *Chief Judge Fuld and Choice of Law,* 71 Colum. L. Rev. 548, 559 (1971). Massachusetts does not appear to have a strong interest in having its gross-negligence rule applied even in its own state. *See Gagne* v. *Berry,* N.H. 290 A.2d 624, 627 (1972). The gross-negligence rule was never applied to wrongful death cases because that statute requires only a showing of ordinary negligence. In recent years, as the Supreme Judicial Court of Maine has pointed out, the Massachusetts court has also resorted to "miniscule nuances of benefits involved" to avoid its application. *Beaulieu* v. *Beaulieu*, 265 A.2d 610, 614 (Me. 1970). Its liberal interpretations include finding sufficient benefit conferred by the passenger so as not to make gratuitous a trip where a passenger with a driver's license accompanied a driver who had misplaced her license and where two friends were going to pick up a suitcase lent by the passenger to the driver. *Posner* v. *Minsky*, 353 Mass. 656, 234 N.E.2d 287 (1968); *Taylor* v. *Goldstein*, 329 Mass. 161, 107 N.E.2d 14 (1952).

Moreover, in 1971, the Massachusetts Legislature abolished the host-guest gross-negligence rule in favor of the rule of ordinary negligence. Mass. Gen. Laws Ann. ch. 231, §85L (Supp. 1973). The comment to that section indicates that one reason for the abandonment of the rule was that "[o]ther than providing some rather interesting opinions, this rule, particularly in recent years, has served no legitimate purpose." *Accord* Smith, *Duty Owed to Guest Occupants in Motor Vehicles,* 57 Mass. L.Q. 59, 60 (1972). While this change in Massachusetts law is not conclusive for this case, it is indicative of the lack of importance of the host-guest gross-negligence rule in Massachusetts. Since Massachusetts has no strong interest in the application of the host-guest rule even in its own courts, and since the purpose of the rule was to protect Massachusetts drivers and car owners against ungrateful guests, we can conclude that the failure to apply the rule in a Rhode Island court against a Rhode Island driver and a Rhode Island car owner will not impair Massachusetts public policy.[3]

Turning to Rhode Island law, we find that this state has never adopted the doctrine of degrees of negligence. *Leonard* v. *Bartle,* 48 R. I. 101, 135 A. 853 (1927). Thus, in Rhode Island a driver owes his guest the same duty of ordinary care that he owes to any other person. *Garabedian* v. *Dizjin,* 58 R. I. 74, 191 A. 257 (1937); *Leonard* v. *Bartle, supra.* When a driver deviates from the standard

---

[3]It is interesting to note that the Supreme Court of California recently found that California's guest statute set up a classification between those denied and those permitted recovery for negligently inflicted injuries which did not bear substantial and rational relation to the statute's purposes of protecting the hospitality of the host driver and of preventing collusive law suits. Therefore, the California court found that the guest statute constituted a denial of equal protection of the laws, both under the California and the United States Constitutions. *Brown* v. *Merlo,* 8 Cal.3d 855, 506 P.2d 212, 106 Cal.Rptr. 388 (1973).

of careful operation of his vehicle, the law of this state reflects a policy that any victims of such improper operation recover for their injuries.

Rhode Island's policy of allowing recovery by passengers for the ordinary negligence of their hosts is not limited to the protection of Rhode Island guests. The state has an interest in enforcing the standard of care of an automobile operator no matter where his guest resides. Thus, had the accident in the instant case occurred in Rhode Island, the defendant would have been liable for his negligence towards his guest. Should, then, a duty imposed by Rhode Island law upon Rhode Island drivers driving in Rhode Island be imposed upon Rhode Island drivers when they are outside the state? The rationale of *Woodward* v. *Stewart, supra,* would provide recovery to a Rhode Island guest from a Rhode Island driver for an accident in Massachusetts as well as to a Massachusetts guest injured by a Rhode Island driver in Rhode Island. We feel that Rhode Island's interest in imposing upon its drivers a duty of ordinary care towards their passengers transcends consideration of the guest's residence and of the state in which the vehicle is operated. Therefore, a Rhode Island driver has the same duty of care towards a Massachusetts passenger whether he is driving in Rhode Island or Massachusetts.

Applying Rhode Island law in the case at hand does not disrupt the expectations of either the Rhode Island driver or the Rhode Island insurer. First, the concept of expectations in automobile tort cases is not a useful one, for motor vehicle accidents are not planned. *Miller* v. *Miller*, 22 N.Y.2d 12, 20, 237 N.E.2d 877, 881-82, 290 N.Y.S.2d 734, 741 (1968); *Clark* v. *Clark*, 107 N.H. 351, 354, 222 A.2d 205, 208 (1966). No driver alters his manner of driving when he crosses into a state which holds him to a lesser degree of care towards his passenger, because he would foresee his legal liabilities in accident cases in light of his

own state's law. *See Brown* v. *Church of the Holy Name of Jesus,* 105 R. I. 322, 329, 252 A.2d 176, 180 (1969). Moreover, Rhode Island insurers write their policies and determine their rates with the knowledge that Rhode Island drivers are liable to their guests for ordinary negligence. Having reviewed the policies supporting the Rhode Island and Massachusetts rules regarding the standard of care which an automobile operator owes his guest, and having applied those policies to the circumstances of this case, we conclude that in this case Rhode Island has the most significant interest in applying its law governing the duty of a driver to his guest.

Before turning to the other issues of this case, we intend to explain why we reach a different conclusion on a similar fact pattern from that of the New York Court of Appeals in *Neumeier* v. *Kuehner,* 31 N.Y.2d 121, 286 N.E.2d 454, 335 N.Y.S.2d 64 (1972). Chief Judge Fuld had felt that the Court of Appeals had had sufficient experience with guest-host conflicts problems to replace its *ad hoc* case-by-case approach by establishing certain guidelines for such problems. *Tooker* v. *Lopez,* 24 N.Y.2d at 584-85, 249 N.E.2d at 403-04, 301 N.Y.S.2d at 532-33 (concurring opinion). Thus, in *Neumeier,* Judge Fuld's three principles for deciding guest-host conflicts questions became the law of New York. However, we must take issue with his third rule, the rule on which the *Neumeier* decision was based.

The third rule provides that when a passenger and driver are from different states, ordinarily the law of the state where the accident occurred will apply. We feel this principle represents a retreat to the doctrine of *lex loci delicti.* If the accident occurs in a state which is the domicile of neither the host nor guest, little reason exists to apply the law of that state. Therefore, one must resort to interest analysis to determine whether the law of the domicile of the plaintiff or of the defendant should apply. Moreover,

Judge Fuld provides an exception to his third rule, which may in practice require a case-by-case analysis of governmental interests.

We agree with Judge Fuld that, if possible, a set of guidelines is preferable to an *ad hoc* approach. *See Reese, Choice of Law: Rules or Approach,* 57 Cornell L. Rev. 315 (1972). However, his third rule neither avoids case-by-case analysis nor produces the most desired result. We prefer a rule that looks to the residence of the parties rather than to the place of the accident in resolving conflicts problems arising out of automobile accidents. Thus, where a driver is from a state which allows a passenger to recover for ordinary negligence, the plaintiff should recover, no matter what the law of his residence or the place of the accident. We adopt this rule because otherwise the only state with an interest in protecting the driver and his insurer would not do so. We are conscious that our conclusion will not be unanimously accepted. *See* Cavers, *Cipolla and Conflicts Justice,* 9 Duquesne L. Rev. 360, 369-70 (1971). However, certain authorities do support our conclusion, and we feel it is sound. *See Pfau v. Trent Aluminum Co.,* 55 N.J. 511, 524, 263 A.2d 129, 136 (1970); *Neumeier v. Kuehner, supra* at 132, 286 N.E.2d at 460, 335 N.Y.S.2d at 73 (dissenting opinion); *Tooker v. Lopez, supra* at 580, 249 N.E.2d at 400-01, 301 N.Y.S.2d at 528 (dicta); Sedler, *Characterization, Identification of the Problem Area, and the Policy-Centered Conflict of Laws: An Exercise in Judicial Method,* 2 Rutgers-Camden L.J. 8, 60-61 (1970); Sedler, *The Territorial Imperative: Automobile Accidents and the Significance of a State Line,* 9 Duquesne L. Rev. 394, 408 (1971); Currie, *Selected Essays on the Conflict of Laws,* 152-56 (1963). We find nothing wrong in a state holding its citizens to a higher standard of care than that of the states to which they may travel, no matter who may be injured by their misconduct.

The defendants also contend that the trial justice erred

in not applying Massachusetts law to the issue of recovery for prenatal injuries. They refer us to *Keyes* v. *Construction Service, Inc.,* 340 Mass. 633, 165 N.E.2d 912 (1960), for the proposition that under Massachusetts law a child, to recover for prenatal injuries, had to have been viable at the time the injury was received. However, defendants have overlooked the later case of *Torigian* v. *Watertown News Co.,* 352 Mass. 446, 225 N.E.2d 926 (1967), which held that recovery would lie under the Massachusetts wrongful death statute where a child, though not viable at the time of a prenatal injury, was born alive but subsequently died as a result of the prenatal injuries. We feel that *Torigian,* a wrongful death case, is also applicable to cases involving prenatal injuries to a living child. Thus, we find that under Massachusetts law the nonviability of a fetus should not bar recovery for prenatal injuries by a child born alive.

In Rhode Island, viability of the fetus is also irrelevant as a criterion in an action for damages for prenatal injuries. *Sylvia* v. *Gobeille,* 101 R. I. 76, 220 A.2d 222 (1966). Finding no conflict between Rhode Island and Massachusetts law on the issue of viability, we do not need to decide the issue of whether the trial justice should have looked to the law of Massachusetts instead of Rhode Island in deciding the facet of this case permitting Colleen Labree to recover for her prenatal injuries.

## II.

*Admissibility of Rebuttal Testimony of Expert Witness*

We turn to defendants' contention that it was error to permit plaintiffs' expert witness, Dr. Alexander A. Jaworski, to testify for the purpose of rebutting testimony adduced through defendants' expert witness, Dr. Eric Denhoff. Doctor Jaworski had testified that it was his opinion that plaintiff Colleen was suffering from convulsive seizures and that her condition was caused by the collision in which Colleen's mother had been injured. Specifically, he stated that the

condition of Colleen was due to "intrauterine cerebral trauma and anoxia at six months of gestation:"

The defendants' expert witness, Dr. Denhoff, agreed that the child's condition was a convulsive disorder and gave three possible causes therefor: (1) the fact that the mother was only 16 years of age at the time of Colleen's birth; (2) the intrauterine infection early in the pregnancy; and (3) the automobile accident. Thereupon, when defendants had rested, plaintiffs then sought to have Dr. Jaworski testify in rebuttal to the testimony of Dr. Denhoff, contending that the purpose of such rebuttal was to permit Dr. Jaworski to comment on the possibility that the mother's youth and her infection in early pregnancy were in fact the causes for Colleen's convulsions. The trial justice allowed Dr. Jaworski to testify over defendants' objection.

It is true, as defendants contend, that a plaintiff who has the burden of proof on an issue cannot hold back his evidence but must give all of his evidence supporting the affirmative of the issue when presenting his case-in-chief. However, a plaintiff is not bound to anticipate a defense. Thus, in rebuttal he is entitled to answer new matter introduced by the defendant. *Souza* v. *United Electric Rys.*, 49 R. I. 430, 432-33, 143 A. 780, 782 (1928). The admission of competent rebuttal evidence lies within the discretion of the trial justice. *Michon* v. *Williams*, 97 R. I. 74, 82, 195 A.2d 751, 755 (1963); *State* v. *Falcone*, 41 R. I. 399, 402, 103 A. 961, 962 (1918).

Prior to ruling on the objections of defendants, the trial justice inquired if Dr. Jaworski had previously testified as to whether the youth of the mother could be a cause of the convulsions and as to whether the intrauterine infection early in pregnancy could be such a cause. Apparently satisfied that the doctor had not so testified, he allowed him to testify in rebuttal.

In our opinion, defendants have not met the burden of

676

establishing that there was an abuse of discretion on the part of the trial justice to allow such testimony in rebuttal. The rebuttal testimony of Dr. Jaworski was material on a matter which had been raised in the course of the defense, and we perceive no abuse of discretion in its admission into evidence.

## III.

### New Trials

The defendants contend that it was error to grant plaintiff Colleen's motion for a new trial on the issue of damages only unless defendants consented to an additur of $17,000. Generally, where the issue is the inadequacy of the damages awarded to compensate for the injuries shown to have been sustained, the trial justice should independently weigh the evidence, pass upon the credibility of the witnesses, and determine whether there is a demonstrable disparity between the amount awarded by the jury and the pain and suffering shown to have been endured by plaintiff. In such situations this court ordinarily will not disturb a finding by the trial justice that the award was inadequate unless it is demonstrated that he was clearly wrong. *Webbier* v. *Thoroughbred Racing Protective Bureau, Inc.,* 105 R. I. 605, 621, 254 A.2d 285, 293-94 (1969); *Handy* v. *Geary,* 105 R. I. 419, 435-38, 252 A.2d 435, 444-45 (1969); *Fitzgerald* v. *Rendene,* 98 R. I. 239, 241, 201 A.2d 137, 138-39 (1964).

In our opinion, however, the question raised by defendants here goes not so much to the adequacy of the damages awarded for the consequences of the injury endured up to the time of the trial, but to whether the jury had failed to award prospective damages to plaintiff Colleen for future pain and suffering. This, in turn, raises a question whether there is in this record competent evidence that plaintiff will in the future continue to have to endure the consequences of the injury sustained for which the dam-

ages awarded do not adequately compensate her. The rule on the entitlement of a plaintiff to prospective damages is set out in *Tilley* v. *Mather*, 84 R. I. 499, 502, 124 A.2d 872, 874 (1956), and *MacGregor* v. *Rhode Island Co.*, 27 R. I. 85, 87-88, 60 A. 761, 762 (1905). Where a question arises as to the adequacy of damages awarded to compensate for the future consequences of an injury, the rule requires that recovery of present damages for the apprehended consequences from the accident must be based upon such a degree of probability as amounts to a reasonable certainty that they will occur as a result of the original injury.

In passing upon this question, it is the obligation of the court to indicate reasonably the grounds upon which it finds the damages to be grossly inadequate. *Fitzgerald* v. *Rendene, supra* at 240-41, 201 A.2d at 138-39. If it be shown that a demonstrable disparity exists between the amount awarded by the jury and the prospect, reasonably certain on the basis of the evidence, of continuance of the seizures in the future, then the award of the additur was proper.

The record discloses that the trial justice specifically considered the expert testimony on the question of whether the convulsive seizures would continue in the future and for how long. He stated that "[t]here is a sharp medical difference of opinion as to whether the child is suffering from a permanent condition or whether the condition will be alleviated when she matures." He further stated that each of the doctors was entitled to credence but went on to say: "Both physicians agree, however, that the child will suffer from this disease into the future." In short, from this he concluded that there would be a continuation of the seizures into the future, but the evidence did not establish the duration of the period through which they would continue. It is apparent that on the basis of this evidence

he found, first, that there would be a reasonable certainty of the continuance of the seizures into the future for some unascertained period and, second, that the award by the jury, while it might be sufficient to compensate for the pain and suffering endured up to the time of trial, would not adequately compensate Colleen for that which she must endure in the foreseeable future. On this basis he granted a new trial on the question of damages only, subject to the acceptance by defendants of an additur of $17,000. We are unable to conclude that the trial justice was clearly wrong in so ordering.

The defendants contend finally that the trial justice erred in granting plaintiff Sally Labree a new trial on the issue of damages only. In deciding plaintiff Sally's motion for a new trial, the trial justice said: "It is clear the plaintiff Sally Labree sustained injuries as a result of the collision. The verdict of the jury should have awarded her damages for those injuries, and having failed to do so she is entitled to a new trial. Since the issue of liability is so clear the new trial shall be on the issue of damages only."

There is no longer any question that a trial justice may, in an appropriate case, order a new trial solely on the issue of damages. *Savard* v. *Industrial Trades Union of America*, 76 R. I. 496, 510, 72 A.2d 660, 667-68 (1950); *Clark* v. *New York, N.H. & H. R.R.*, 33 R. I. 83, 80 A. 406 (1911). However, the grant of a trial on the issue of damages only is subject to some limitation, and this court has frequently held that such a motion should be granted on *all* of the issues when in its judgment it appears that to limit such a new trial to the issue of damages would be unjust to the other party. *Sullivan* v. *John R. White & Son*, 36 R. I. 488, 497, 90 A. 738, 742 (1914); *Clark* v. *New York, N.H. &. H. R.R.*, *supra* at 103, 80 A. at 413-14. The matter is one which is left to the discretion of the trial justice, and a party, by demanding a new trial on a single issue, cannot deprive the

court of jurisdiction to order such a trial on all the issues in his sound judicial discretion.

It is well settled that a trial justice, in an exercise of such discretion, should grant a motion for a new trial, solely on the issue of damages, only when the issue of liability has been fairly tried and settled in a prior proceeding. The Massachusetts court in *Boyd* v. *Brown*, 34 Mass. (17 Pick.) 453, 461 (1835), on such a motion found that the damages were excessive and said: "But this we do not consider a sufficient reason for setting aside the verdict and granting a new trial so as to open the whole merits of the case to future litigation, which have been once fairly tried, especially as the verdict may be set aside in part, and a new trial granted with respect to the assessment of damages only, as was done in the case of *Winn* v. *Columbian Ins. Co.*, 12 Pick. 288; and thus the only error existing may be corrected without the expense of a new trial on the merits." *Accord Ryder* v. *Hathaway*, 38 Mass. (21 Pick.) 298, 306-07 (1839).

In the state of the record here, however, we are unable to reasonably conclude that the question of defendants' liability in the instant case was fairly tried and settled at the prior trial. The record discloses that the jury, after its deliberation, returned a verdict for plaintiff Sally without awarding her any damages. The trial justice thereupon directed the jurors to return to their deliberations, instructing them that if they found that plaintiff Sally had sustained any injuries, they should return a verdict for her and award her damages for such injuries. However, if they found that she did not suffer any injuries, they should return a verdict for defendants. After this instruction, the jury came back with a verdict for defendants.

We cannot reasonably assume that the jury was not confused when it was instructed to return a verdict for the defendants if it found the plaintiff, Sally, had sustained no injuries. To the contrary, it is difficult to escape con-

cluding that the jury was confused and misled into returning a defendants' verdict. However, we will not indulge in speculation as to why the jury returned the verdict that it did. It suffices to say that in the circumstances it is our opinion that the interests of justice will be best served if a new trial is ordered for the plaintiff Sally on all of the issues involved in the case.

The defendants' appeal as it relates to the order of the trial court granting the plaintiff Sally Labree a new trial solely on the issue of damages is sustained, and the judgment below is modified to the extent that such a new trial shall be had on all the issues in the case. Otherwise, the appeal of the defendants is denied and dismissed, the judgment appealed from, other than as modified herein, is affirmed, and the cause is remanded to the Superior Court for further proceedings in accordance with this opinion.

Mr. Justice Powers participated in the decision but retired prior to its announcement. Mr. Justice Joslin did not participate.

*John F. McBurney*, for plaintiffs.

*Swan, Keeney & Jenckes, Henry M. Swan, Conrad M. Cutcliffe*, for defendants.