MILTON REID *vs.* ISRAEL HASSENFELD.

CHRISTINA REID *vs.* ISRAEL HASSENFELD.

MAY 3, 1957.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

ANDREWS, J. These actions of trespass on the case for negligence were brought by a husband and wife and arise out of an automobile accident in which the wife was injured.

When the cases were reached on the jury trial calendar, the defendant submitted to decision for each plaintiff and requested that the damages be assessed by the court without the intervention of a jury. The court acceded to the defendant's request and after a full hearing awarded the wife $6,000 and the husband $700. The cases are before us on defendant's exceptions to the decisions and to certain rulings of the trial justice.

On February 21, 1951 in the latter part of the afternoon Mrs. Reid was operating an automobile on North Main street in the city of Providence, and while she was stopped at a red light defendant's automobile ran into the back of her car, pushing it some three car lengths ahead. Mrs. Reid was thrown against the steering wheel. She immediately felt pain in her neck and shoulders, and a few minutes later when she started to drive she felt pain in her lower back and down the right leg.

The next morning she called Dr. Earl J. Mara, her family physician, who told her to remain quiet and if she did

not feel better to let him know. Since she was not improving, she went to him a few days later. He examined her and was of the opinion that she had a lumbosacral strain and sprain of her neck and shoulders. He testified that he treated her for about two months, but she states it was about six months. As she was still complaining, he referred her to Dr. Herbert E. Harris, an orthopedic specialist.

Mrs. Reid went to Dr. Harris February 13, 1952, about a year after the accident, and he treated her for a little over three years. He diagnosed her condition as a lumbosacral strain. Doctor Harris was of the opinion that she was very much disabled and unable to carry on her regular duties. He prescribed a sacroiliac belt. By the next July he felt that because of her continued back and right leg pains with numbness in the lower leg and foot she might have a ruptured disc. Acting upon his advice, Mrs. Reid had a myelogram performed, which was negative. Doctor Harris testified that in December 1954 he suggested another myelogram, but at the time of the hearing it had not been performed, and there is no evidence that Mrs. Reid was likely to submit to any further operations.

Mrs. Reid was examined once by Dr. Joseph C. Johnston, a general practitioner, and once by Dr. Edmund B. Curran, an orthopedist. Doctor Johnston found little or nothing wrong with her. Doctor Curran first diagnosed her condition as a "Herniated intervertebral disc, L-5, right side." On redirect this doctor said that because the myelogram was negative his diagnosis was not tenable any more, but he admitted that he had found ruptured discs after negative tests. He also expressed the opinion that this accident could not have caused a herniated disc because the steering wheel would not have let Mrs. Reid go forward far enough. He was further of the opinion that bearing six children was the cause of her low back pain.

In 1939 Mrs. Reid fell on the ice and fractured her coccyx, but after a few months she said all trouble from it

ceased and that it had not bothered her since. In 1948, practically three years before the instant accident, she had another accident and suffered an injury to her lower back. Doctor Harris treated her for this injury and discharged her free of complaints in about six months. He said that the injuries were in different parts of the back, and there was no connection between the accidents of 1948 and 1951. He stated further that the condition for which he last treated her was the result of the accident of 1951. Mrs. Reid testified that she had no trouble with her back between the accidents of 1948 and 1951. Doctor Johnston saw no connection between either of these accidents and her condition in 1952. Doctor Curran testified that there might be some connection with the earlier accident but it was "a weak opinion."

It appeared from Mrs. Reid's testimony that she had stopped the treatments with Dr. Harris some three months before the hearing but that she still had intermittent pain in her back and leg and was wearing a belt which had been prescribed for her. She also testified that she continued to drive, but if she went any distance she had a dreadful pain in her back.

Mrs. Reid did dressmaking at her home before this accident and earned about $15 a week. She testified that she had carried on her work between the two accidents. The court allowed her $5 a week for the loss of this income.

The defendant first attempts to eliminate the decision of the trial justice by contending that he misconceived both the law and the facts, thus leaving the case for our determination without regard to the decision of the trial justice. He has selected certain remarks of the trial justice to support his contention, but after carefully examining them in connection with his other remarks and the entire transcript, we are of the opinion that the trial justice did not misconceive the law or the facts.

The defendant next attacks the amounts awarded. He

admits that there was evidence to support approximately $600 in money losses by the husband but claims that the other $100 is without support in the evidence. Doctor Harris expressed the opinion that an exploratory operation on Mrs. Reid's spine would be necessary before her back is better. There is no evidence that Mrs. Reid is likely to submit to a further operation. Therefore there was no basis for awarding damages for this item. *MacGregor* v. *Rhode Island Co.,* 27 R. I. 85, 87. Consequently the decision for Milton Reid should be reduced to $600.

As to Mrs. Reid's award, defendant states: "Plaintiff Christina may not hold her recovery because the court below erred. Misconceptions of evidence give no weight to the decision of that court but the Supreme Court will itself review the record and order a Remittitur or a De Novo Trial on the question." From this statement it would appear that defendant relies wholly upon his claim of misconception which we have already rejected. After stating that Mrs. Reid suffered pains for more than four years and lost approximately $5 a week for most of the time, the trial justice fixed her damages at $6,000. Those were findings of fact which we cannot say were clearly wrong. *Armfield* v. *McClure, Inc.,* 77 R. I. 390, 395. See *Young* v. *Cantz,* 85 R. I. 7, 125 A.2d 181.

We will now consider defendant's exceptions numbered 1, 2, 3, 4, 5, 6 and 8, to certain rulings taken during the course of the trial. Exception 7 was expressly waived. The defendant admitted before us that none of these challenged rulings were individually prejudicial but he claimed that taken as a whole they were prejudicial. We agree with the admission but not with the claim. However, we shall discuss two of the exceptions, namely, 6 and 8, the only ones having any color of merit. Exception 6 involves the refusal of the trial justice to sustain defendant's objection to plaintiff's attorney asking Mrs. Reid on redirect examination about her dressmaking losses. This occurred on the

fourth day of the trial, but on the first day she testified in direct, without objection, to the same matter which was covered by the challenged ruling.

On this exception defendant argued that the proof of these losses was not admissible under the pleadings, but such is not the case. In her declaration she stated that by reason of her injuries she had been "incapacitated in her usual work and manner of living." In his motion for a bill of particulars defendant asked the nature of plaintiff's occupation. The answer thereto was: "Housewife, dressmaking and practical nurse." In *Champlin* v. *Pawcatuck Valley Street Ry.*, 33 R. I. 572, 584, the court charged that if the jury found that the plaintiff had lost anything by reason of the accident because he was unable to perform his usual vocation "then to the extent that he has already suffered pecuniary loss in this respect, this will constitute an element of damages." The declaration in that case contained an allegation that plaintiff would be incapacitated from working and earning wages and acquiring income which but for said injury he would have earned and acquired. The exception to the charge was overruled. See also *White* v. *Alexion*, 79 R. I. 297, 302.

We note here that defendant does not take the position that the wage loss was not properly proved. Mrs. Reid did dressmaking at her home. What a dressmaker or seamstress earns could well be considered wages and not profits. In *Roy* v. *United Electric Rys.*, 52 R. I. 173, at page 176, this court stated: "However, where the amount of capital invested is comparatively insignificant and the income is produced almost entirely by the personal efforts of the plaintiff—for example the case of a book-agent—it has been frequently held that the income, although partly from invested capital, is a proper element of damage." The investment of a seamstress in needles and thread seems to us to be comparatively insignificant. This exception is overruled.

The eighth exception involves the court's refusal to sustain defendant's exception to the cross-examiner asking Dr. Curran as to his diagnosis of a herniated intervertebral disc. In the first place, the question as to which the objection was made was not answered. A substantially similar question was then asked without objection. This question was answered. The defendant's counsel argued to the trial justice that the question to which he objected was beyond the scope of the direct examination and that he had purposely avoided asking Dr. Curran what his actual diagnosis was. However, in direct he had asked the doctor if he found any objective evidence of a lumbosacral sprain. We believe that plaintiff's question was therefore within the proper scope of cross-examination. This exception is overruled.

In the husband's case the defendant's exception to the decision is sustained, all of his other exceptions are overruled, and the case is remitted to the superior court for a new trial on the question of damages only unless the plaintiff shall, on or before May 10, 1957, file in the office of the clerk of that court a remittitur of all of the decision in excess of $600. If such remittitur is filed, the superior court is directed to enter judgment on the decision as reduced by the remittitur.

In the wife's case all of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment for the plaintiff on the decision.

*Charles H. Anderson, Edward Bromage, Jr.,* for plaintiffs.

*Carroll & Dwyer, Edward F. J. Dwyer, Robert L. Kiernan,* for defendant.