William SHEPARDSON et al.

v.

CONSOLIDATED MEDICAL
EQUIPMENT, INC. et
al.

No. 97–200–Appeal.

Supreme Court of Rhode Island.

June 29, 1998.

Robert D. Parrillo, Providence, for Plaintiffs.

David W. Carroll, Michael Sarli; William H. Jestings, Providence, for Defendants.

Before LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before a three-judge panel of the Supreme Court on April 21, 1998, pursuant to an order directing both parties to appear and to show cause why the issues raised in this appeal should not be summarily decided. The defendant, Hani M. Zaki, M.D. (Dr. Zaki), appeals from a Superior Court judgment in favor of the plaintiffs, William Shepardson (Billy), and his parents, Steven and Lisa Shepardson (parents). After hearing the arguments of counsel and reviewing the memoranda of the parties we are satisfied that cause has not been shown. Accordingly, we shall decide the issues raised by this appeal at this time.

This medical malpractice case resulted from injuries sustained by Billy during a routine surgical procedures. The child, who was three-years old at the time of the incident, had been suffering from repeated ear infections. Upon the recommendation of his pediatrician, Billy underwent surgery for the insertion of tubes in his ears and for the removal of his tonsils and adenoids. The procedure was performed by Dr. Zaki at St. Joseph Hospital (hospital) on January 16, 1990. Following the procedure Dr. Zaki informed Billy's parents that the surgery had gone well but that there had been an accident in the operating room. Doctor Zaki stated that the grounding pad of the electro-surgical unit used during the operation had malfunctioned.[1] As a result Billy suffered second- and third-degree burns on his right anterior thigh.

The parents and Billy filed suit against Dr. Zaki, the hospital, and the manufacturer of the electrosurgical unit, Consolidated Medical Equipment, Inc. (Conmed). Thereafter a jury trial commenced in Providence Superior Court. At trial Lisa Shepardson (Mrs. Shepardson) testified to the extent of Billy's injuries and the significant care involved in tending to them. Mrs. Shepardson stated that when she first saw the wound, it looked like raw flesh. She also indicated that the severity of the burns necessitated that the bandage on Billy's leg be changed two to three times per day over a period of several weeks, a procedure that required the participation of both parents. The child would scream throughout these ministrations and became fearful of his parents, cringing in anticipation of the treatments. As a result it became necessary to sedate the child with pain medication prior to changing the dressing.

The problems resulting from the burns were not limited to those associated with the bandage changing. Mrs. Shepardson also testified about Billy's inability to sleep throughout the night owing to the intense pain, as well as his difficulty walking, and how this problem too was a source of considerable pain and discomfort. Whenever Billy attempted to walk, according to Mrs. Shepardson, the bandage would slide down his leg and the wound would become irritated. She testified that the child had to be monitored closely both to keep the wound clean and to prevent infection.

In addition to the physical problems associated with the injury, Mrs. Shepardson also testified concerning a vacation to Disney World that the family had planned and paid for prior to the scheduled surgery. She noted that the surgery had been scheduled in advance of the trip so that Billy would be

---

1. An electrosurgical unit, which is similar to a generator, is plugged into an electrical outlet in the operating room to provide an electrical current for use by the surgeon. This unit uses high-frequency electrical current to heat the tissue where the surgeon is working in order to cut the tissue or to cause coagulation. One of the attachments to the unit is for a grounding pad that is placed on the patient so that the electrical current may be dispersed and travel back to the machine.

able to travel safely. Although the family did in fact travel to Florida, Billy was unable to walk much through Disney World, and his parents had to carry him or had to place him in a rented stroller. Mrs. Shepardson testified that his mobility was sufficiently limited in that he could not go swimming or use the pool or go to the beach. As a result of the severity of the burns the child is scarred and is conscious of the scarring. He refuses to wear regular shorts or a swimsuit in the summer and will only wear shorts that end below the knee.

According to Mrs. Shepardson, all this has worked a hardship on the entire family. She described how she and her husband were almost in tears when they first began to change the bandages; the pain it caused the child and the severity of the injury were extremely upsetting to them.

Prior to the conclusion of plaintiffs' case in chief the hospital settled its claim with all plaintiffs by agreeing to pay $90,000 in exchange for a release. An order relating to this settlement was entered by the trial justice and provided in part:

"The remaining defendants are entitled to the full benefit of the joint tortfeasor statute, so-called, in that any verdict against them or any of them will be reduced by the percentage of negligence of the settling co-defendant, or the sum to be paid to each plaintiff, as indicated above, whichever is greater, with the intention of this Court to give the remaining defendants the full benefit of the joint tortfeasor statute, so-called."

Despite this provision and a request made by the remaining defendants at the conclusion of the charge to the jury, the trial justice failed to instruct the jury that it must consider and determine the extent of negligence, if any, attributable to the hospital and thereafter apportion liability among joint tortfeasors accordingly. The trial justice refused this request, apparently on the grounds that defendants' counsel had failed to request the charge prior to the trial justice's instructions to the jury. Although it is undisputed that counsel for Dr. Zaki did not specifically request an instruction relative to the apportionment issue, his counsel informed the trial

justice of his objection at the conclusion of the charge and stated that he did not believe it was necessary to make a specific request because counsel for plaintiffs had included it in their request for instructions and the court had entered the settlement stipulation as an order. Nevertheless, the trial justice concluded that since the hospital was no longer a party to the case, there was no need to instruct the jury in accordance with the joint tortfeasor statute.

The jury returned a defendant's verdict with respect to the claims against Conmed. With respect to the claims against Dr. Zaki, the jury returned a verdict for plaintiffs in the amount of $125,000 for Billy and $25,000 for each parent for loss of consortium. The trial justice subsequently denied Dr. Zaki's motion for a new trial as well as his motion to vacate, alter, or amend the judgment. This appeal followed.

On appeal Dr. Zaki presents several arguments. First, Dr. Zaki assigns as error the failure of the trial justice to instruct the jury with respect to the hospital's negligence and the joint tortfeasor statute. Doctor Zaki maintains that both the written order entered and Rhode Island law mandate an instruction on the hospital's negligence. We agree.

■■■■ The Uniform Contribution Among Tortfeasors Act (act), G.L.1956 chapter 6 of title 10, controls the result in this case. Both the hospital and Dr. Zaki are clearly joint tortfeasors under the act because they are both allegedly liable in tort for the same injury to plaintiffs. See § 10–6–2. See also Cooney v. Molis, 640 A.2d 527, 528 (R.I. 1994). This act not only provides for the right of contribution among joint tortfeasors but also governs the effect of a release on the liability of the remaining tortfeasors. Sections 10–6–3 and 10–6–7. "In language this [C]ourt has previously described as 'free of ambiguity,' the act states that the release of one joint tortfeasor 'does not discharge the other tortfeasors unless the release * * * *'" indicates the intention to do so. Cooney, 640 A.2d at 529. The liability of the other tortfeasors, however, is reduced by the amount of consideration paid for the release. See id. Simply stated, amounts paid by settling de-

fendants are credited to the verdict amount returned against the remaining defendants, or the award of the jury is reduced by the proportion of reduction provided by the release, whichever is greater. *See id.; Augustine v. Langlais,* 121 R.I. 802, 804, 402 A.2d 1187, 1188–89 (1979). Failure to instruct the jury as such constitutes reversible error.

The plaintiffs maintain that defendants waived this issue by failing to submit the requested charge to the trial justice prior to his charge to the jury. We find this position to be without merit. Rule 51(b) of the Superior Court Rules of Civil Procedure provides in pertinent part:

> "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. No party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection."

We are satisfied that Dr. Zaki sufficiently alerted the trial justice to his concerns and adequately advised him of the insufficiency of the court's charge. Therefore, the failure of the trial justice to instruct the jury to consider the negligence of the hospital in accordance with the terms of the release and the joint tortfeasors act was an error requiring reversal.

Because we are remanding this case for a new trial, we shall address the additional issues advanced by Dr. Zaki that pertain to damages. On appeal Dr. Zaki maintains that judgment as a matter of law should have entered in his favor with respect to Billy's claim for future medical expenses because the child is not entitled to recover damages for scarring to his leg and for the expense of repairing those scars at a later age. Doctor Zaki further asserts that he was entitled to judgment as a matter of law with respect to the parents' claim because the evidence did not support an award of damages for loss of society. We respectfully disagree.

■ The record discloses that plaintiffs presented the expert testimony of Howard S. Sturim, M.D. (Dr. Sturim), a plastic surgeon who testified that Billy faces from six to twelve separate procedures on his upper thigh should he decide to undergo revision surgery to minimize—but not eliminate—the scarring. All defendants vigorously opposed the introduction of evidence concerning the costs of this surgery on the ground that plaintiffs had failed to present an economist to testify about the cost of those procedures in terms of their present-day value. The trial justice properly rejected this argument as having no basis in law.

■ This Court has never determined that entitlement to damages for future medical expenses arising from injuries incurred as a result of the negligence of another is dependent upon a calculation made with mathematical precision. Damages that are foreseeable are recoverable in negligence actions, including actions for medical malpractice. *See Pescatore v. MacIntosh,* 113 R.I. 139, 148 n. 5, 319 A.2d 21, 26 n. 5 (1974); *Labree v. Major,* 111 R.I. 657, 677–78, 306 A.2d 808, 819–20 (1973). It is reasonably foreseeable that a three-year-old child who suffers second-and third-degree burns on his upper thigh will be badly scarred and that any revision surgery will not be undertaken until the child grows up. The fact that the cost of that medical procedure, which may take place as much as ten years in the future, cannot be calculated with mathematical exactness does not deprive that child of the right to recover damages for future medical expenses. Doctor Sturim not only indicated that a range of six to twelve surgeries would be necessary to alleviate some of the scarring, but that it was possible to estimate the approximate cost of each procedure. He testified that because the cost of plastic surgery for scar revision is not covered by most medical-insurance policies, he advises all prospective patients of the probable costs of such surgery. We are satisfied that this evidence is sufficiently definite to be admissible and to support the award of damages with respect to Billy's claim.

■ Doctor Zaki also maintains that he was entitled to judgment as a matter of law

on this issue because Dr. Sturim testified that the child *may* undergo surgery in the future and that, therefore, there was no evidence that the child was likely to submit to this surgery. In support of his argument Dr. Zaki relies on *Reid v. Hassenfeld*, 85 R.I. 340, 131 A.2d 681 (1957). This reliance, however, is misplaced. In *Reid* the plaintiff and her husband were suing for damages resulting from an automobile accident in which the plaintiff was involved. *Id.* at 342–43, 131 A.2d at 682. At the time of trial the plaintiff had already undergone a myelogram to determine the extent of an injury to her back. *Id.* at 343, 131 A.2d at 682. She did not consent to or undergo, however, a second myelogram, as her doctor had suggested, nor was there any indication that she intended to do so. *Id.* Nevertheless, her doctor expressed the opinion that exploratory surgery on her spine was necessary. *Id.* at 345, 131 A.2d at 683. This Court agreed with the defendant that there was no basis for awarding damages for this exploratory surgery because no evidence was offered that plaintiff intended to undergo the procedure. *Id.* We conclude on the basis of this record that a jury could decide to award damages to Billy for the cost of surgical revision of this scarring. First, the evidence was that Billy and his parents agreed to wait until Billy turned eighteen before undergoing the surgery. Second, Mrs. Shepardson testified that the child is embarrassed about the appearance of the scars and refuses to talk about them. Finally, the medical field has advanced significantly since 1957 when *Reid* was decided. The suggestion of exploratory spinal surgery is quite different from calculating a reasonable estimate including the child's age and the costs associated with plastic surgery, which is a fairly common procedure today.

Finally, Dr. Zaki suggests that the parents were not entitled to damages for loss of consortium and that the trial justice should have granted judgment as a matter of law. Once again we must respectfully disagree. We are satisfied that the evidence presented in this case entitled these parents to recover for loss of the society and the companionship of their son. The care and maintenance of the burns, the pain that they caused their child, and the fact the parents had to not only witness this pain but also to inflict it are losses that are compensable. It is reasonable for a jury to conclude that the parents were entitled to recover.

For the foregoing reasons we sustain Dr. Zaki's appeal in part and vacate the judgment from which he appealed. We remand the case to the Superior Court for a new trial with our decision endorsed thereon.

WEISBERGER, C.J., and BOURCIER, J., did not participate.